[No. 18116.    Department One.    November 19, 1923.]

## DAVIS LUMBER COMPANY et al., Appellants, v. PACIFIC LUMBER AGENCY, Respondent.[1]

APPEAL (33, 167, 218)—DECISIONS REVIEWABLE—AMOUNT IN CONTROVERSY—PARTIES—SURETIES ON COST BOND. The sureties on a cost bond given by plaintiff in the superior court, are not necessary parties who need be served with notice of appeal from an adverse judgment of the superior court, in view of the constitutional restriction (Const., Art. 4, § 4) limiting the right of such sureties to appeal to the supreme court to cases involving more than $200.

COMPROMISE AND SETTLEMENT (3)—CONTRACT FOR—CONSTRUCTION. A proposition to make an "adjustment" of a claim that part of a car load of 25,000 feet board measure of spruce lumber was below grade (making it worth $3 to $5 per thousand less than it would have been if up to contract) by taking the stock on the basis of $71.50 reduction from invoice for 1x8", $70.50 covering 1x10", and $80.50 covering 12", "which is flat for the entire quantity of the different widths," is an offer to compromise for $222.50 on the carload lot, and not an offer of reduction at so much per thousand feet.

Appeal from a judgment of the superior court for Grays Harbor county, Abel, J., entered March 31, 1923, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

E. E. Boner, J. G. Arnold, and Henry Bauer, for appellants.

John C. Hogan, for respondent.

HOLCOMB, J.—A motion by respondent to dismiss the appeal herein upon the ground that no notice of appeal was served upon the sureties on the cost bond given by appellants as plaintiffs, in the court below, is denied, under the authority of our decisions in In re Tenth Avenue Northeast, 121 Wash. 520, 215 Pac. 56, and

[1]Reported in 220 Pac. 804.

*Norbom Engineering Co. v. Cox & Co.*, 120 Wash. 675, 208 Pac. 87.

The action is for damages, claimed by appellants because a certain carload of spruce lumber, ordered from respondent, was not of the grade specified in the order. In January, 1920, appellants bought from respondent a quantity of spruce finish lumber, of the grade known to the trade as "B and Better"; for which it paid respondent $2,204.27, and which it had shipped to Rosedale, Kansas, where the lumber was re-sold to one P. J. Byrne & Son for $2,888.82. Byrne & Son rejected the shipment, and a reinspection was ordered by respondent, which was made on June 8, 1920, and the result of the reinspection reported to appellants on July 15, 1920. The carload of lumber comprised 25,300 feet board measure, and the reinspection at Rosedale, Kansas, showed a large percentage of lumber to be off grade on account of defective machine work; that is, defective planing, the surface of the lumber being rough and fuzzy in places so as to disqualify a large percentage of it for spruce finish. Otherwise, as to clearness and quality, outside of the planing and machine work, the lumber was up to grade.

The defective machine work, while disqualifying a large percentage of the lumber from qualifying as spruce finish, called for by the order, would not prevent the lumber from qualifying for the next lower grade, known as "Factory Finish." There was practically no difference in the market at that time between "Spruce Finish," as called for by the order, and "Factory Finish," the grade next below; and if there was any difference, it was not to exceed two or three dollars per thousand feet. All of the lumber could have been made to conform to the contract by a sanding process, which would have cost not to exceed $5 per thou-

sand feet. There was practically no change in the market value of "Spruce Finish" between January 21, 1920, and the month of August, 1920, except that the market value of that grade of lumber was about $2 per thousand feet less in August, 1920, than it was in January and February, 1920, so that the market value remained practically the same for some months after January, 1920.

Appellants knew at all times that respondent had purchased the carload of lumber from the Donovan Lumber Company on the same specifications, and that the Donovan Lumber Company was responsible over to respondent for the car of lumber at that time. After the reinspection at Rosedale, Kansas, and on July 15, 1920, respondent wrote appellants as follows:

"Referring to your letter of July 12th relative to Southern car 17885: We attach hereto copy of reinspection report and ask that you endeavor to make an adjustment with P. J. Byrne & Son to the best possible advantage.    Yours very truly,
                    "Pacific Lumber Agency."

Acting under that letter, appellants took the matter up for adjustment with P. J. Byrne & Son as to the deduction, if any, to be allowed them on the carload of lumber, and received from them a reply which, after stating certain deductions, would have made the net balance $661.38, which they were willing to allow and pay, dating from acceptance, 60 days net, 2 per cent 15 days. Instead of submitting the proposition of adjustment that P. J. Byrne & Son had submitted to respondent, on the basis of P. J. Byrne & Son's letter to it, appellants submitted to respondent the following proposition under date of August 12, 1920:
"Pacific Lumber Agency,
      "Aberdeen, Washington.
    "Gentlemen: In compliance with your letter of July 15th, we have been trying to make an adjustment

with the P. J. Byrne & Son Company of Rosedale, Kansas, covering shipment in Southern car 17885, but the best we have been able to get from them in a definite proposition is that they will take the stock on the basis of $71.50 reduction from invoice covering the 1x8", $70.50 covering the 1x10" and $80.50 covering the 12", which is flat for the entire quantity of the different widths. We would not, of course, take the responsibility of making any such adjustment without your further authority, and we would ask that you let us hear from you on this, without fail, by very early mail.

"You will appreciate the fact that our money has been tied up in this shipment since early in February, or six months longer than would have been the case had the lumber been up to grade, and as the funds are needed for use in other directions, we want to get that back without further delay.

"Yours very truly,
"Henry D. Davis Lumber Co.,
"By M. Lanning, Vice-president."

The above letter was taken by respondent to mean as stated in the letter, and that it means that P. J. Byrne & Son were willing to accept a deduction of $222.50 on the carload lot; and it was not taken by respondent to mean, and did not mean, that the deduction specified was so much per thousand feet. Respondent, after receiving from appellants the offer of settlement above, of August 12, 1920, took the matter of settlement up with the Donovan Lumber Company, the party liable over to respondent, on the supposition and belief on the part of respondent, that appellants' offer of settlement was on the basis of a deduction of $222.50 only; and, in that belief, submitted the matter in that way to the Donovan Lumber Company, and exhibited appellants' letter of August 12, 1920, to the Donovan Lumber Company, and finally reached an agreement with the Donovan Lumber Company to the effect that the Donovan Lumber Company would stand and bear

the deduction of $222.50; and thereupon respondent accepted appellants' offer of settlement of August 12, 1920, and wrote appellants the following letter of acceptance:

"Henry D. Davis Lbr. Co.,          August 20, 1920.
  "Northwestern Bank Bldg.,
    "Portland, Oregon.
  "Gentlemen: This will acknowledge receipt of your letter of August 12. Mr. Donovan has been out of town and just returned to the city. In a conference with him this afternoon he has authorized an acceptance of the offer which has been made by your customer, not because he thinks it is a fair and just offer, but because the controversy has gone on for such a length of time that he does not care to be troubled with it any longer. We will thank you to close this matter up promptly and let us have a final settlement.
                    "Yours very truly,
                        "Pacific Lumber Agency."

Respondent thereupon released the Donovan Lumber Company, which paid respondent the $222.50, and received a full release from respondent of any further liability, and respondent thus changed its position by releasing the party liable over to it. It so changed its position, as testified, and as found by the trial court, in reliance upon and because of appellants' letter of August 12, 1920. Appellants, after receiving respondent's letter of acceptance, made its settlement with P. J. Byrne & Son. No further communication was made by appellants to respondent from the date of the letter of August 12, 1920, until October 26, 1920, when appellants billed respondent for the sum of $1,933.05, being the amount claimed by appellants it was obliged to allow as a deduction to P. J. Byrne & Son in accordance with the settlement authorized by respondent by the letter of acceptance of August 20, 1920. It was only after receiving appellants' letter of October 26,

1920, that respondent, for the first time, was given to understand that appellants, by their letter of August 12, 1920, offering settlement "on the basis of $71.50 reduction from the invoice covering the 1x8″," "$70.50 covering the 1x10‴" and "$80.50 covering the 12‴" intended, or claimed to intend, that its figures were to be taken for these amounts "per thousand feet, board measure," on the entire quantity of these different sizes of lumber. Meantime respondent had settled with the Donovan Lumber Company on the other basis, released it, and had changed its position. Respondent would not have accepted the offer of settlement had it believed that the deductions were on the basis of "per thousand feet, board measure," instead of a lump sum, but would have taken the lumber back. In that event, appellants' damages recoverable would have been only $3 per thousand feet, board measure, or thereabouts. Respondent was at all times ready, willing and able to pay appellant the sum of $222.50, and offered to pay the same in October, 1920, which appellant at all times knew, but refused to accept the same; and after the commencement of the action, respondent tendered the amount of $222.50 to appellant, plus the accrued costs in the action up to the date of tender, and kept its tender good in court.

The foregoing is a statement of part of the facts found by the court, upon ample evidence. There are other facts found which are also material to the case, the findings being very comprehensive. Upon the facts, the court concluded that appellants were entitled to judgment for the sum of $222.50, and no more, and costs up to the time the tender was made in court, and that respondent was entitled to costs of action after the tender was made in court.

Appellants contend that it is clear that what they meant and intended to say in the letter of August 12,

1920, replying to respondent's letter of July 15, was that it could *re-sell* the lumber at the specified reductions per thousand feet.

Whatever might have been in the mind of the writer of the letter of appellants, it seems clear to us that the letter was in reply to the request on the part of respondent, of July 15, for an *adjustment* with P. J. Byrne & Son; that they had been trying to make an adjustment, and that they had arrived at an adjustment by which there would be certain deductions, the amounts of which were stated and which the writer stated "is flat for the entire quantity of the different widths." We cannot perceive how there can be any other understanding on the part of respondent than it gave in the letter. Respondent asked appellants to make an adjustment with its customer. Appellants wrote that they had been trying to make an adjustment, and had reached a certain basis of adjustment. An adjustment means an arrangement; a settlement. Standard Dictionary. It does not mean a resale. The overwhelming weight of the evidence in the record shows that the letter would have been understood by lumbermen exactly as it was understood by respondent. The overwhelming weight of the evidence also sustains every finding of the trial court. The judgment is therefore affirmed.

MAIN, C. J., PARKER, and MACKINTOSH, JJ., concur.

TOLMAN, J. (concurring)—I concur in the results reached by Judge Holcomb upon the ground that no notice of an intention to make a resale of the lumber for respondent's account was ever given, and because, when the true terms of the adjustment were made known, respondent could not be put in *status quo.*