## UNITED STATES v. 11,360 ACRES OF LAND IN YUBA COUNTY, CAL., et al.

### Civil Action No. 4442.

District Court, N. D. California, N. D.

Nov. 1, 1945.

M. Mitchell Bourquin, Sp. Asst. to Atty. Gen., for plaintiff.

Manwell & Manwell, of Marysville, Cal., for defendants Wellman.

WELSH, District Judge.

The Government brought this action to condemn land for military purposes. Possession was obtained pursuant to law of 11,360 acres, more or less, in the County of Yuba, State of California, designated as the Marysville Cantonment, and subsequently called Camp Beale. Defendants William E. and Viola Wellman were the owners of 40 acres, with improvements thereon, in said area for which they agreed to accept $4,260. An option was executed accordingly on the 2nd day of March, 1942.

Defendants continued to remain in possession until the 28th day of March, 1942, when a fire destroyed their family dwelling. They carried insurance thereon in the sum of $2,000. Their insurance carrier tendered a check for said amount, which was forwarded to plaintiff, but acceptance thereof was declined. Defendants are, so far as this Court is advised, still entitled to the payment of said insurance. Plaintiff claims that title to the property had not yet passed, that it had not accepted possession, and that the full purchase price could not, therefore, be paid.

■ If there were solely a question of eminent domain involved herein the following principles would apply.

"The owner [is] entitled to * * * 'market value' * * * of what is taken * * * what 'it fairly may be believed that a purchaser in fair market conditions would have given * * * market value fairly determine' * * * what a willing buyer would pay in cash to a willing seller." United States v. Miller, 317 U.S. 369, 374, 63 S.Ct. 276, 280, 87 L.Ed. 336, 147 A.L.R. 55.

"The compensation to which the owner is entitled is the full and perfect equivalent of the property taken. Monongahela Nav. Co. v. United States, 148 U.S. 312, 327, 13 S.Ct. 622, 37 L.Ed. 463. It rests on equitable principles and it means substantially that the owner shall be put in as good position pecuniarily as he would have been if his property had not been taken." Seaboard Air Line R. Co. v. United States, 261 U.S. 299, 304, 43 S.Ct. 354, 356, 67 L.Ed. 664.

"The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable. The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held." Olson v. United States, 292 U.S. 246, 254, 54 S.Ct. 704, 708, 78 L.Ed. 1236.

The situation is of the sort referred to in Montana R. Co. v. Warren, 137 U.S. 348, 11 S.Ct. 96, 97, 34 L.Ed. 681:

"At best, evidence of value is largely a matter of opinion, especially as to real estate. * * * The jury is compelled to reach its conclusion by comparison of various estimates. Much more so is this true when the effort is to ascertain the value of real estate in the country, where sales are few, and where the elements which enter into and determine the value are so varied in character."

■ The defendants are placed in an even stronger position by reason of the fact that negotiations had reached the point where an actual option contract had been entered into with the Government. One provision of said contract relied on by plaintiff reads:

"(5) The Vendor agrees that loss or damage to the property by fire or acts of God shall be at the risk of the Vendor

until the title to the land and deed to the United States have been accepted by the United States through its duly authorized representative, or until the right of immediate occupancy and use of the land, as hereinbelow provided for, has been exercised by the United States, and in the event that such loss or damage occurs, the United States may, without liability, refuse to accept conveyance of title, or it may elect to accept conveyance of title to such property, in which case there shall be an equitable adjustment of the purchase price."

The Government has elected to accept title to the property, consequently "an equitable adjustment of the purchase price" is in order.

What would be an "equitable adjustment" under these circumstances? Plaintiff appears to take the view that it is entitled to the land at a price fixed by its appraiser in arriving at the figure of $4,260 for the land with the dwelling house standing thereon. The Court is not convinced that that would be equitable.

It is not inequitable to require the Government to pay an amount in excess of the $23.50 per acre fixed by its appraiser for the bare land. It is a matter of common knowledge that actual use as dwellings is not made of buildings such as those standing on defendants' property at the time the contract was made. Defendant William Wellman testified that Government engineers had told him that he could buy the buildings back for $515, and that he actually would have purchased them if the house had not taken fire. These buildings included the dwelling which the official appraiser had appraised at $3,000, and on which defendants carried insurance in the sum of $2,000.

■ The term "equitable" has been defined as meaning "according to natural right or natural justice; marked by due consideration for what is fair, unbiased, or impartial; fair; just." Taylor v. School District, 128 Neb. 437, 259 N.W. 168, 169. Also as being "characterized by equity or fairness; according to the principles of equity; just and right; fair; reasonable." Burlington Transp. Co. v. Iowa State Commerce Commission, 230 Iowa 570, 298 N.W. 631, 635.

Adjustment has been said to mean an arrangement; a settlement. Davis Lumber Co. v. Pacific Lumber Agency, 127 Wash. 198, 220 P. 804, 805.

■ It seems fair, reasonable and just in making an arrangement or settlement for the parties involved to take into consideration the situation in which defendants are placed. They may well have concluded originally to take the amount offered by the Government even though they firmly believed that their property was worth more. It is possible that they had in mind other property which might be purchased as a home for approximately the $4,260 which was offered. They might have been quite unwilling to take a lesser sum. Now that their dwelling has been destroyed and they are offered only the price of the bare land, they are entitled to have figures other than those prepared by the plaintiff's appraiser taken into consideration.

There is testimony in the record that defendants' land itself, without the improvements, was worth $45 per acre. The Court is inclined to accept that figure rather than the $23.50 per acre mentioned by the witness Thomas G. Mapel. Said witness had not lived in, or consummated any real estate transactions in, the vicinity of defendants' land. As a resident of Sacramento, it appears that he had no specific knowledge of the tract involved in this action prior to the time he was employed to make appraisals in the year 1941.

The only testimony as to the value of the barn, garage, shop, woodshed, storage shed, acetylene tank, pipes, fixtures, waste bowl and well which was cemented down to rock, was that of said witness Mapel. The Court therefore takes his figure of $320 for these items.

Forty acres of land at $45 per acre amounts to $1,800. Adding the aforesaid $320 makes a total of $2,120. It is concluded, therefore, that $2,000 is an equitable adjustment of the purchase price, for which it is ordered that defendants have judgment.

It is hereby further ordered that defendants recover interest at the rate of six per cent (6%) per annum on said amount from the date of taking of the property.

Counsel for defendants will prepare findings in accordance herewith.