Marius v. Bicknell.

---

## MARIUS *et als. v.* BICKNELL *et als.*

Counsel, in the trial of a cause, can not object that the Court did not render judgment on the special verdict of the jury, where they have stipulated that such additional facts may be found by the Judge, as would, in his judgment, be sufficient to present all the questions raised by the pleadings.

Where a suit is brought to test the question as to the priority of appropriation of water, a prayer for an injunction, to prevent future injury, is proper.

An objection that different causes of action have been improperly joined, is waived by the failure of defendants to demur.

In an action to try the right to the use of water and for damages for diverting it, where the amount for which judgment is given is less than $200, it will carry costs.

APPEAL from the District Court of the Eleventh Judicial District, County of Placer.

This action was brought to recover damages alleged to have been sustained by reason of the diversion of the waters of Marius Ravine, in Todd's Valley, in the county of Placer.

The plaintiffs, Francisco Marius, Charles Youngworth, Alex-

ander M. Maxwell, and S. B. Miller, allege that they, together with one Henry Rasin, (who is made defendant, because of his refusal to be one of the plaintiffs,) were, on the first day of June, 1855, and still are, the owners, and in the possession of a certain water-ditch in Placer county, leading from the ravine at the lower end of Todd's Valley, known as the Marius Ravine, at a point on the right bank of said ravine, and running thence in a west-south-west direction, about sixty rods down said ravine; and thence extended in two branches, the first running a distance of about twenty rods, to the junction of the main ravine and Dutch Ravine; the second branch leading across Dutch Ravine, a distance of about one mile, etc. That the first ditch or branch has the capacity to carry three hundred inches of water, sluice measure; and the second branch, one hundred and fifty inches of water, sluice measure.

Plaintiffs allege that they, and those under whom they claim title, constructed said Marius Ravine Ditch, in the month of November, 1851, and the part called the extension, in the month of January, 1852, and that both were constructed and have been used for mining purposes; that at the time of the construction of said ditch, and the appropriation of the waters of the Marius or Todd's Valley Ravine, no other appropriation of the waters thereof had been made; and that they acquired the sole and exclusive right to the use of the same.

On the first day of June, 1855, the defendants constructed two ditches, called respectively Rasin and Shenanagan Ditches, draining the waters of Todd's Valley Ravine, about one-half mile above the head of plaintiffs' ditch, and thereby diverting and depriving the plaintiffs of the waters that flow down said ravine.

The complaint prays that the Court decree the plaintiffs' right to the waters of the ravine, give judgment for $1000 damages, and for an injunction to restrain defendants from using the waters of the ravine.

Defendants in their answer set up four grounds of defence:

1. They deny the allegations in the complaint.

2. Aver that they and those under whom they claim, were the first to appropriate the waters of Todd's Valley Ravine.

3. That the plaintiffs are not the real owners of the ditches described in their complaint, and that some of plaintiffs have no interest in the matter in litigation.

4. That several causes of action have been improperly united in this: that defendants Bicknell, Ward, and Freer, are the owners of the Shenanagan Ditch, and have no interest whatever in the Rasin Ditch; and that defendants Rasin and Ebbro are the owners of the Rasin Ditch, and have no interest in the other.

On the trial of the cause, the Court submitted to the jury the following propositions for them to find upon, and they gave the answers annexed to each proposition as herein set forth, viz.:

1. Are the present plaintiffs the owners of the Marius Ravine and Extension Ditch?

*Ans.*—They are.

2. For what purpose was the Marius Ravine Ditch (or drain) constructed, and for what purpose was it used? You will also find whether it was used, continuously, up to the time Brown sold to the plaintiffs, or was it abandoned?

*Ans.*—It was constructed and used for the purpose of supplying the sluices and toms. It was used continuously, and never abandoned.

3. If you find that the Marius Ravine Ditch was constructed by the miners along the ravine the better to work their claims by getting water to their toms and claims, you will find how many were interested; and whether any, and if so, how many of them, abandoned their rights up to the time Brown sold to the plaintiffs in this suit?

*Ans.*—It was constructed by about twenty-five miners, and abandoned by about half of them.

4. When was the Extension Ditch constructed, and what was the object in constructing it? Was it abandoned at any time before plaintiffs acquired their title to it, if so, when and where did plaintiffs become the owners thereof?

*Ans.*—Constructed in February, 1852, for mining purposes. Never was abandoned.

5. When was the Rasin Ditch constructed, and for what purpose? Was it ever abandoned before the present claimants acquired their title to it, if so, where and when did claimants acquire their rights to it?

*Ans.*—January, 1852. For mining purposes. Never was abandoned.

6. When was the Shenanagan or Bicknell Ditch dug, and for what purpose? Was it abandoned at any time before Bicknell & Co. acquired their interest in it; if so, when and where did Bicknell & Co. become the owners thereof?

*Ans.*—It was commenced some time in 1850. Was abandoned. The jury find that the present owners date their title back to some time in 1852; can't agree as to the month.

7. Have defendants a joint interest in the Rasin and Shenanagan Ditches? If not, did they, between June, 1855, and the 21st of December of the same year, jointly use or divert the waters of said ravine?

*Ans.*—Defendants have not a joint interest in the ditches, but did divert the water jointly through the Rasin Ditch.

8. Was any water running in the Shenanagan Ditch between June and the 21st of December, 1855?

*Ans.*—There was not.

9. If any of the water of said ravine has been diverted and used between June and the 21st of December, 1855, who used or

diverted it? And if any was used or diverted, was it done by defendants, and if so, which one, and what was the value of the water?

*Ans.*—There was water diverted by defendants jointly, and worth two dollars per day.

10. When did Brown sell to the plaintiffs?

Agreed to by counsel.

Upon this verdict, the plaintiffs moved for judgment, and the Court deeming the verdict incomplete and insufficient to present properly the issues raised in the pleadings, the case was by counsel submitted to the Court, with the agreement that such additional facts should be found by the Court as would, in his judgment, be sufficient to present all of the questions raised in the pleadings, and upon which testimony was introduced at the trial; and, in conformity with this agreement, the Court found the following facts in addition to those found by the jury, viz. :

11. That the Marius Ravine Ditch or drain spoken of in the second finding of the jury, was constructed in November, 1851, by about twenty-five miners, who owned separate claims along the bed and banks of said Marius Ravine, for the purpose of getting the water out of the ravine, and for the additional purpose of enabling them to get a sufficient fall to work these claims by means of hose leading the water from the ditch to their toms at their claims. At the time of the construction of this ditch, the water of said ravine was unappropriated. That said ditch taps the main ravine at the point therein mentioned. That after said ditch was dug, the water of said ravine was diverted into the same, and, as it flowed past the respective claims of those who dug it, so much was used from the ditch as was necessary to work each owner's claim, and the residue, when there was an excess, fell into the ravine below said claims. That each owner of a claim in the ravine, dug the ditch past his claim, at his own expense, and not at the joint expense of the twenty-five. The dam at the head, and about twenty rods of the ditch, were constructed by the miners, jointly, and were so used by them. That at the time of digging this ditch or drain, what is denominated in the complaint and fourth finding of the jury as the Extension Ditch, was not projected or contemplated, and was not commenced until the month of February, 1852, at which time five of the twenty-five who dug the first ditch or drain, with one other not interested in that, making six in all, commenced the extension ditch at a point about one-third to one-half of the distance from its head to its terminus, and extended it thence from one-quarter to one-half a mile, with a capacity to carry fifty or sixty inches of water, sluice measurement.

That Marius, one of the plaintiffs in this suit, aided in the con-

struction of the Marius Ravine and Extension Ditches, and has not abandoned the interest he acquired therein.

That Brown, the person referred to in the verdict of the jury, sold his interests in said ditches to plaintiffs in the month of October, 1855, and he and Marius were the only persons interested in said ditches. Brown acquired such interest as he had at the time of the sale, by gift from some of the former owners, by verbal sale and delivery of possession from others.

How many days the defendants used the water, as mentioned in the ninth finding by the jury, my recollection does not serve me accurately, but as much as one day.

Brown was one of the twenty-five miners who constructed the Marius Ravine Ditch, and continued to hold his interest therein until he sold to the plaintiffs in October, 1855.

That part of the Marius Ravine Ditch, below the point where it was tapped by the Extension Ditch, was abandoned, and the part above used in connection with the Extension Ditch after the same was constructed.

Upon these findings and facts, the Court decreed that "the plaintiffs have the right to all the waters flowing in Todd's Valley, or Marius Ravine, without interruption by said defendants, down the bed and along the natural water-channel of said ravine into and through the water-ditch of plaintiffs, known as the Marius Ravine and Extension Ditch, except at such times as there may be a surplus of water running in said ravine at the head of said ditch of plaintiffs, over and above three hundred inches of water-ditch measure, and at all such exempted times, to the said amount of three hundred inches. And it is further decreed that the said defendants, and each of them, their agents, servants, and assigns, be, and they are hereby, perpetually enjoined from any interference with the rights of the plaintiffs as hereinbefore discribed," etc. Plaintiffs had judgment against the defendants for two dollars damages and costs of suit, taxed at $309 20.

From which judgment the defendants appealed to this Court.

*Smith & Hardy* for Appellants.

Upon the first point, it is only necessary to refer to the record, where it will be seen that the Court ruled that the facts found were not sufficient to give the plaintiff a judgment.

If the facts found were not sufficient to justify a verdict for plaintiffs, defendants were certainly entitled to a judgment.

The fact that there were more owners in the ditch belonging to plaintiffs than were joined in the suit as parties plaintiff, is conclusive of the points in this case. See Practice Act, title Parties; Oliver et al. *v.* Walsh et al., 6 Cal. R., 456.

The third point of error is equally well settled on principle and authority.

There is no pretence anywhere that defendants had ever threatened or offered to commit any other injury than the one day of simple trespassing.

A Court of Equity interferes only where a continuous injury is threatened. Story's Equity Jurisprudence, vol. 2, § 163, etc.

A suit for damages and an application for injunction can not be joined in the same suit. McCann v. Sierra County, 7 Cal. R., 121.

The opinion of Chief Justice Murray, in the case of McCann v. Sierra County, is only confirmatory of the common law, and in consonance with the whole current of decisions. See Chitty's Pleadings, vol. 1, p. 201, and cause cited.

The Court erred in giving judgment for costs. The suit was a simple suit for trespass, and the amount recovered being less than two hundred dollars, plaintiffs had no right to costs. See Practice Act, title Costs.

The facts found by the Court and jury do not show that the water was diverted from the natural channel for any useful purpose, and this Court has already decided in this case, when it was here before, that the diversion must be for some useful purpose to entitle the diverting party to reclaim a prior appropriation. Maeris v. Bicknell, 7 Cal. R., 261.

*Tuttle & ——— for Respondents.*

The nature of the complaint is that of trespass on the case, with an application to the chancery side of the Court for a decree declaring plaintiffs' rights, and an injunction protecting them.

The prayer of the complaint is double—for general relief and an injunction, and also for damages. That this pleading is proper, see Bates et al. v. Nash, 6 Cal. R., 192; Keiff v. Gates, 7 Cal. R., 124.

Respondents contend that the findings of the Court, when contradictory of the findings of the jury, will be rejected, and that the findings of both Court and jury, when upon questions not raised in the pleadings, will be regarded as surplusage.

Appellants having elected to appeal on the record alone, and not having moved for a new trial, or brought up the testimony, the Court will not assume that respondents, on the trial below, allowed testimony to be introduced without objection, on issues not raised in the pleadings.

The answer is—

*First*—A general denial, and the complaint not being under oath, this puts in issue every material allegation.

*Second*—That defendants had appropriated the water long prior to plaintiffs.

*Third*—By way of statement that plaintiffs are not the real owners of the ditch alleged in the complaint to be theirs.

This last only puts in issue a material issue of the complaint, and therefore amounts to nothing but a general denial.

*Fourth*—That some of the plaintiffs have no interest in the matter in litigation.

This is an allegation of misjoinder of parties plaintiff, and if it had appeared on the trial, would have been ground of nonsuit. See 1 Chitty's Pleadings, 66.

Above allegation is not a nonjoinder, and if it had been, would have been disregarded for not giving the names of those who had been omitted, and were proper parties.

*Fifth*—That several causes of action have been improperly united.

This allegation is mere surplusage, for the facts which it sets up do not amount to a misjoinder of action. It is an allegation which, had it been supported by evidence, would have compelled plaintiffs to submit to a nonsuit as to part of defendants, and take a verdict against the remainder, and need not have been set up in the answer.

The answer, then, amounts to a general denial, and an allegation of misjoinder of parties plaintiff by way of abatement.

The only question that can now be raised is, whether the findings show an appropriation of the water in the beginning for a useful purpose under the former decision of this Court in this case. See Maeris et al. *v.* Bicknell et al., 7 Cal. R., 261.

On this point, the jury find that plaintiffs' ditch was constructed to supply their sluices and dams with water, and was used continuously.

This is the object for which all ditches for mining purposes are excavated, and when claims are worked out in one place, the right of extension should be guarantied to first projectors. If subsequent appropriators are allowed to deprive them of the water, because the claims they first supplied were worked out, it would not only be unjust, but would throw a cloud of uncertainty over property of this kind. The first appropriation being for a useful purpose, the water may afterwards be used in all places for any purpose. If first diverted for mining, if that fails, it can be used for irrigation, for machinery, or any other object. All owners of ditches are continually extending branches as new mines are developed.

The first appropriator acquires a franchise; unless he abandons, his property is permanent. His rights are not dependent on the length or extent of his ditch. If it consists of a dam alone, which throws the water on the bank, so that it be used, it can be carried further and further, as new objects are discovered on which it can be applied.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

This case was before this Court at the January Term, 1857. (7 Cal. Rep., 261.)

1. It is objected that the Court erred in not rendering judgment for defendants, upon the special verdict of the jury. But this objection is overcome by the fact that the case was submitted by counsel of the parties, to the Court, with the agreement that such additional facts should be found by the Judge, as would, in his judgment, be sufficient to present all the questions raised by the pleadings.

2. The jury found that the plaintiffs were the owners of the ditches claimed by them; and there was, therefore, no nonjoinder of the parties plaintiff.

3. The suit was properly brought to test the question as to the priority of appropriation; and the prayer for an injunction, to prevent future injury, was proper. The defendants set up a right in themselves, claiming to be the prior appropriators of the water.

4. There was no misjoinder of causes of action; and if there had been, the objection was waived by failing to demur to the complaint. (Gates v. Keiff, 7 Cal. Rep., 124.)

5. The Court did not err in rendering judgment for costs, though the amount of damages recovered was less than two hundred dollars.

6. There was no substantial difference between the special verdict of the jury and the finding of the Judge, as to the fact that the water was diverted by the original contractors of the main ditch for mining purposes. It appears, from the finding of the Judge, that it was constructed both as a drain and as a channel to convey water for mining purposes.

Judgment affirmed.