[No. 26732.   Department Two.   May 23, 1938.]

HARRY BOWYER *et al., Respondents and Cross-appellants,* v. BOSS TWEED-CLIPPER GOLD MINES, INC., *et al., Appellants.*[1]

[1]Reported in 79 P. (2d) 713.

26

*Thomas Masuda* and *Adam Beeler,* for appellants.

*M. H. Van Nuys* and *Hartge & Cadwallader,* for respondents and cross-appellants.

BEALS, J.—During the year 1932 and prior years, one John L. Templeman, an attorney residing in the city of Butte, Montana, owned a valuable gold mine located near Pony, in that state. A corporation known as the Boss Tweed-Clipper Gold Mines of South Dakota had been organized under the laws of South Dakota during the year 1931, for the purpose of operating the mine.

In March, 1932, a corporation named Boss Tweed-Clipper Gold Mines, Inc. (hereinafter referred to as Boss Tweed), was incorporated under the laws of this state, assumed the obligations of the South Dakota corporation, and from August, 1932, operated the mine under an executory contract of sale from Mr. Templeman, the purchase price of the property to be paid to

Mr. Templeman in installments. Most of the Boss Tweed stock was owned by Japanese who were interested in mining, but one share of stock stood in the name of O. H. Ebbinghouse, who was elected vice-president of the corporation. Apparently, Mr. Ebbinghouse and his wife, Frances Ebbinghouse, were friends of the Japanese stockholders, and helped them with counsel and, occasionally, money.

The mine is valuable, but Boss Tweed experienced considerable difficulty in paying the operating expenses, in addition to the payments due Mr. Templeman. One of these latter payments fell due November 23, 1932, at which time Mrs. Ebbinghouse advanced to Boss Tweed seven hundred dollars, to enable the corporation to meet the payment as called for by the contract, and prevent a forfeiture. At this time, considerable sums were due from the corporation on account of machinery and supplies, and liens for labor had been filed against the mine amounting in all to a sum in excess of sixteen thousand dollars. Realizing that funds must be raised, Boss Tweed employed plaintiffs, Harry Bowyer and R. W. Hutchison, to endeavor to secure funds, agreeing to pay them a commission amounting to twenty per cent of all money which they procured.

Prior to January, 1933, when another installment would become due to Mr. Templeman, the latter gave to Messrs. Uyeda and Fujita, of Portland, Oregon, who were stockholders in Boss Tweed, an option on the mine, conditioned on the failure of Boss Tweed to make the required January payment and the subsequent forfeiture of the contract between Templeman and that corporation. During the month of December, 1932, J. T. Hikida, evidently a man of considerable means, was interested in the mine, and apparently was willing to invest therein as much as thirty thousand dollars,

if after a personal examination of the property he felt that such an investment would be wise. Hikida visited the mine and learned that Boss Tweed was indebted in a large amount, as he thought approximately one hundred thousand dollars. He therefore told his associates that he would not advance money to Boss Tweed. Learning of the agreement between Mr. Templeman and Uyeda and Fujita, Hikida, believing that the mine was a good one, formed a plan to organize a new corporation, and either procure from Uyeda and Fujita the option which they owned, or procure a new option from Mr. Templeman.

Boss Tweed failed to make the January payment due on its contract of purchase, and Templeman declared the contract forfeited. Shortly thereafter, Hikida took an assignment of the Uyeda-Fujita option and organized, under the laws of South Dakota, a corporation named Royal Gold Mining Company, with a capitalization of $2,500,000. Upon being advised by his attorney in Seattle that his new corporation was overcapitalized, and that for other reasons it was inadvisable to attempt to operate this corporation, Hikida organized, under the laws of the state of Washington, Pacific Gold Mining Company, which took over the mine and has since operated the same.

Thereafter, plaintiffs Bowyer and Hutchison instituted this action against Boss Tweed, Royal Gold Mining Company, a South Dakota corporation, Pacific Gold Mining Company, a Washington corporation (hereinafter referred to as Pacific Gold), and M. Shimokon and F. S. Matsumura, stockholders in Boss Tweed and Pacific Gold, and J. Tsuji Hikida, a stockholder in the last named company, though not a stockholder in Boss Tweed, asking judgment upon a first cause of action for six thousand dollars, being twenty per cent of thirty thousand dollars, which they alleged they had raised

under the agreement hereinabove referred to; upon a second cause of action for twenty thousand shares of the capital stock of Boss Tweed, or its value, which plaintiffs alleged was due to Mrs. Frances Ebbinghouse for services rendered; and in a third cause of action for seven hundred dollars, which they alleged Mrs. Ebbinghouse had loaned Boss Tweed; the complaint alleging that Mrs. Ebbinghouse had assigned both her claims to plaintiffs.

The defendants appeared separately and demurred to each of the three causes of action for want of sufficient facts. These demurrers were argued and overruled by order dated June 3, 1935. No other motion or demurrer was interposed by any defendant. Thereafter, the defendants filed separate answers to the complaint, Boss Tweed interposing a counterclaim and set-off in the sum of one thousand dollars.

The action was tried to the court, sitting without a jury, the court filing its written memorandum decision September 14, 1936, stating that plaintiffs would be granted judgment as asked for in their second and third causes of action, and that this judgment would run against Boss Tweed, Pacific Gold Mining Company, and defendants M. Shimokon, F. S. Matsumura, and J. Tsuji Hikida. Thereafter, findings of fact and conclusions of law along this line were entered, followed by a judgment dismissing plaintiffs' first cause of action with prejudice, and granting plaintiffs judgment for seventeen hundred dollars against the defendants above named upon plaintiffs' second and third causes of action. The court dismissed with prejudice Boss Tweed's counterclaim for one thousand dollars.

Defendants Boss Tweed, Pacific Gold, M. Shimokon, F. S. Matsumura, and J. Tsuji Hikida appealed from the judgment rendered against them, and plaintiffs cross-appealed from the judgment in so far as it dis-

missed their first cause of action. To avoid confusion, Messrs. Bowyer and Hutchison will be referred to as plaintiffs, and the defendants either as defendants or by their respective names.

Defendants and appellants assign error upon the denial of their motion, made at the opening of the trial, to require plaintiffs to elect as between the causes of action pleaded in their complaint. They also assign error upon the order of the trial court overruling their demurrers; upon the denial of their motion for a nonsuit; upon the finding that Boss Tweed had agreed to pay plaintiffs a commission of twenty per cent; upon the finding that Boss Tweed was indebted to Frances Ebbinghouse in the sum of one thousand dollars for services; upon the finding that defendants had entered into a conspiracy to defraud plaintiffs and other creditors of Boss Tweed; upon the entry of judgment against the defendants other than Boss Tweed; upon the entry of judgment against Boss Tweed upon plaintiffs' second cause of action; and upon the dismissal of defendants' counterclaim for one thousand dollars. Plaintiffs contend that the trial court erred in denying them any recovery on account of the commission which they allege they earned under an agreement that plaintiffs should receive twenty per cent of any amount which they raised.

Plaintiffs alleged, and the trial court found, that the defendants conspired to defraud plaintiffs, Frances Ebbinghouse, and other creditors of Boss Tweed, and in carrying out the conspiracy, on or about January 3, 1933, entered into a secret written agreement with Templeman, whereby the latter executed to Messrs. Uyeda and Fujita (who were stockholders in Boss Tweed) a written option to purchase the mine for fifty thousand dollars, to take effect in case the contract or

option between Templeman and Boss Tweed should be forfeited.

The trial court further found that neither the individual defendants herein, with the exception of Hikida, who was not a stockholder in Boss Tweed, nor Uyeda nor Fujita made any effort to raise the five thousand dollars required to make the January payment to Templeman, intending to cause the Boss Tweed option or contract to be forfeited, all for the purpose of eliminating the creditors of Boss Tweed; that Hikida was fully advised as to these matters, and was urged by Fujita to finance a new corporation to take over the mine; that Hikida examined the mine and was satisfied with the property; and that he also knew that the mine was closed, and that Boss Tweed owed between ten thousand dollars and fifteen thousand dollars in unpaid labor claims and was insolvent. The court further found that January 27th, with the knowledge and approval of the other individual defendants, Hikida paid to Templeman the sum of three thousand dollars on account of the Uyeda-Fujita option, receiving a new option on the mining property; that thereafter Pacific Gold was organized, took over the contract for the purchase of the mine, and commenced to operate the property, Hikida, being the majority stockholder, having invested in the mine the sum of forty-two thousand dollars; that Hikida paid nothing to Uyeda or Fujita, nor to anyone else, for the purchaser's interest in the option, and made no agreement to pay anything for such interest.

The court further found that January 23rd, defendant Shimokon informed Mrs. Ebbinghouse that Templeman had granted a five day extension for the payment of the five thousand dollars due on the Boss Tweed contract, and that Shimokon, a few days later, conveyed the same information to plaintiffs; that

neither plaintiffs nor Mrs. Ebbinghouse were advised that the five thousand dollars had not been paid by Boss Tweed, or that Uyeda and Fujita had taken a new option on the property, until March or April following, plaintiffs and Mrs. Ebbinghouse believing that Hikida had made the five thousand dollar payment due from Boss Tweed on account of that corporation; and that as late as July, 1933, Hikida, by statements made to Mrs. Ebbinghouse, led her to believe that he was looking after the interests of the stockholders of Boss Tweed, thereby inducing her to use her influence to procure the assignment to Hikida of a conditional sales contract on mining machinery running to Boss Tweed.

From the findings, the court concluded that plaintiffs were entitled to judgment as above stated, and such a judgment was duly signed.

In the first place, defendants argue that the trial court erred in denying their motion to require plaintiffs to elect between their causes of action, and state whether they would rely on a tort or a contract liability. In their complaint, plaintiffs state three causes of action, as above set forth. Defendants, appearing separately, demurred to each of plaintiffs' three causes of action, upon the ground that no sufficient facts were alleged. No special demurrer upon the ground that several causes of action had been improperly united was filed, nor was any motion made to strike the complaint upon the ground that non-joinable causes of action were contained therein. Defendants' demurrers were argued and by written order overruled. Defendants then answered separately, but no one of them raised by answer any question as to the joinder of plaintiffs' three causes of action in one complaint.

Rem. Rev. Stat., § 263 [P. C. § 8350], referring to pleading to a complaint, reads as follows:

"If no objection be taken either by demurrer or answer, the defendant shall be deemed to have waived the same, excepting always the objection that the court has no jurisdiction, or that the complaint does not state facts sufficient to constitute a cause of action, which objection can be made at any stage of the proceedings, either in the superior or supreme court."

When the case was called for trial, all the defendants save one joined in the motion above referred to. The court denied this motion, which was renewed and again denied at the close of plaintiffs' case.

The rule is stated in I Bancroft, Code Pleading, as follows:

"§ 713. Rules Stated.—The codes, after prescribing the grounds of demurrer and authorizing a defendant to urge such objections by answer when they are not apparent upon the face of the complaint, provide generally that if no objection be taken, either by demurrer, or answer, the defendant must be deemed to have waived the same, excepting only the objection to the jurisdiction of the court and the objection that the complaint does not state facts sufficient to constitute a cause of action. Accordingly, all grounds of special demurrer are waived if not presented by demurrer when apparent upon the face of the complaint, or by answer, if not so apparent. Such grounds are waived where the demurrer interposed is general, and they are not specified therein."

"§ 715. Waiver of Misjoinder of Causes.—An objection to the misjoinder of causes of action appearing on the face of the complaint should be taken by demurrer, or it is deemed waived. This objection is waived by answering over. When, however, the objection is properly taken by demurrer, it is not, it has been held, waived by subsequently answering the complaint and going to trial on the merits."

This court has repeatedly held that an objection to the complaint, save as to the exceptions mentioned in Rem. Rev. Stat., § 263, *supra,* must be presented by de-

34

murrer, preliminary motion, or answer. This matter was discussed in the early case of *Renton v. St. Louis,* 1 Wash. Ter. 215. Other cases in point are: *Harrington v. Miller,* 4 Wash. 808, 31 Pac. 325; *Gleason v. Tacoma Hotel Co.,* 16 Wash. 412, 47 Pac. 894; *Marvin v. Yates,* 26 Wash. 50, 66 Pac. 131; *Ames v. Kinnear,* 42 Wash. 80, 84 Pac. 629; *Hughes v. McVay,* 113 Wash. 333, 194 Pac. 565, 14 A. L. R. 681.

Many authorities from other jurisdictions lay down the rule that a defect in a complaint by reason of misjoinder of causes of action is waived by a failure to demur or state the point in the answer. *Marius v. Bicknell,* 10 Cal. 217; *Roberts v. Eldred,* 73 Cal. 394, 15 Pac. 16; *Tucker v. Hudson,* 38 Okla. 790, 134 Pac. 21; *Parker v. McGinty,* 77 Colo. 458, 239 Pac. 10.

The causes of action pleaded in the complaint were not inconsistent. Assuming that, under Rem. Rev. Stat., § 296 [P. C. § 8380], the complaint was obnoxious to a motion to strike the same, or to a special demurrer, that objection was waived by defendants' failure to raise the question by motion or demurrer.

Considering a similar question, the supreme court of Arizona, in the case of *Neil v. Chrisman,* 26 Ariz. 566, 229 Pac. 92, used the following language:

"In the lower court appellant merely requested the court to require appellee to elect. If the complaint had set forth inconsistent causes of action, the proper procedure was not followed to cure such defect. Paragraphs 468 and 469 of the Civil Code of 1913 provide that the defendant may demur to the complaint, when it appears upon the face thereof that several causes of action are improperly united, and that, if no such objection is made, the defendant shall be deemed to have waived the same."

The supreme court of Oklahoma, in the case of *Oates v. Freeman,* 57 Okla. 449, 157 Pac. 74, used the following language:

"The next assignment of error is that the court did not require the plaintiff to elect as to which cause of action he proposed to rely on. If causes of action were improperly joined, the proper practice was to attack the petition by the demurrer. [Quoting statutes.]

"This section [§ 4742, Rev. Laws 1910] was construed by this court in *Choctaw, O. & G. R. Co. v. Burgess*, 21 Okla. 653, 97 Pac. 271, where it is held that misjoinder of causes of action should be raised by demurrer. It is true that there was a demurrer filed in this case, but it was only on the ground that the petition did not state a cause of action. The defendants therefore waived the question of misjoinder. But in no event have the defendants been injured, for if the petition had been attacked by demurrer on this ground, the court could only have required the plaintiff to file several petitions, each including such causes of action as might have been joined."

If plaintiffs had filed separate actions, each stating one of the causes of action which were united in their complaint, the court might well have consolidated the actions for trial, and an order of the court effecting such consolidation would certainly have been well within the exercise of judicial discretion.

Defendants' objection to the complaint came too late, and the court committed no error in denying their motion.

If defendants' motion be considered merely as a motion to require plaintiffs to elect between their causes of action, it was properly denied, as the causes of action were not inconsistent.

Plaintiffs argue that the causes of action joined in their complaint were properly joined and cite authorities in support of their contention, but in view of our holding that defendants' objection on the ground of misjoinder came too late, this phase of the case need not be further considered.

Defendants' demurrers, directed separately to the three causes of action set forth in plaintiffs' com-

plaint, presented only the question of law whether or not each of these causes of action pleaded sufficient facts to entitle plaintiffs to relief. Undoubtedly, each of these causes of action is good as against a general demurrer, and the court did not err in so holding.

Examination of the record convinces us that the trial court properly found that Boss Tweed agreed with plaintiffs to pay them a commission if plaintiffs succeeded in raising any money for Boss Tweed; and also that the court properly found that Mrs. Ebbinghouse had loaned Boss Tweed seven hundred dollars, for which she should have judgment, and was entitled to judgment against Boss Tweed for one thousand dollars on account of services rendered by her to the corporation.

We shall now consider the question of whether or not the trial court properly granted plaintiffs judgment against the individual defendants and against Pacific Gold. As a basis for this judgment, the court found that the individual defendants had entered into a conspiracy to defraud plaintiffs and their assignor and the creditors of Boss Tweed.

It appears that one Sawyer, residing at Butte, was the president of Boss Tweed, was one of the incorporators, and had been one of the promoters of the mine. Mr. and Mrs. Ebbinghouse had become interested in the mine before the Japanese invested therein. Mr. Ebbinghouse was one of the incorporators, and was a director and vice-president. Mrs. Ebbinghouse was also one of the incorporators.

According to the terms of the option from Templeman to Boss Tweed, the former was to receive fifty thousand dollars for the mining property. Of this sum, Boss Tweed paid ten thousand dollars, the last payment of twenty-five hundred dollars having been made November 23, 1932. A further payment of five

thousand dollars fell due January 23, 1933. As above stated, the payment due in November was raised only after extraordinary exertions and with the aid of a needed seven hundred dollars loaned by Mrs. Ebbinghouse.

It clearly appears from the record that, during the fall of 1932, Boss Tweed was in a hopeless financial condition, had suspended operations because of unpaid debts, and that unless some person appeared who was willing to advance a very large amount of money in addition to the five thousand dollars due Mr. Templeman, the stockholders would undoubtedly lose their investment. Mr. Ebbinghouse testified that the corporation was indebted for machinery, materials, power, hardware, labor, and groceries. It does not appear that the company had any money or owned anything upon which money could be raised.

During the month of December, the two Portland stockholders above referred to interviewed Mr. Templeman, and procured from him the "sub-option," as they called it, which Mr. Templeman executed, subject to the existing option to Boss Tweed. Mr. Templeman immediately advised Mr. Sawyer, the president of Boss Tweed, that this sub-option had been executed, and also advised him that, if the January payment was not made when due, the option in favor of Boss Tweed would be terminated.

The record affords no basis for any criticism of Mr. Templeman. The record is not clear as to the indebtedness due from Boss Tweed outside of the purchase price of the mine, but such indebtedness amounted to twenty-five thousand dollars or thirty thousand dollars. The record indicates that the stockholders of Boss Tweed were absolutely unable to raise the funds necessary to protect their option and keep the mine in operation.

Defendant Hikida was not a stockholder in Boss Tweed, and apparently first heard of the proposition late in December or early in January, when plaintiffs and Mr. Ebbinghouse endeavored to interest him in the mine as an investment. At first, he refused to consider the proposition, but finally went to Butte and examined the property. He was an absolute outsider, and naturally would invest in the mine only if he thought the proposition a good one, and upon such terms as he deemed satisfactory to himself. Evidently, it occurred to him that the initiation of a new title to the mining property by some new contract with Mr. Templeman would be much more advantageous than an investment in Boss Tweed, with its handicap of a large indebtedness, including many liens. He finally decided to take up the new option, if the former option to Boss Tweed should be forfeited. This new option called for a purchase price of fifty thousand dollars, no credit being given thereon for the payments made by Boss Tweed.

Hikida made the required down payment on the new option out of his own funds, and the option was thereafter transferred to Pacific Gold, that corporation being organized to operate the mine. It is nowhere suggested that Hikida prevented Boss Tweed from keeping its option in good standing; but on the contrary, it appears that Boss Tweed was absolutely unable to do this. The record does not show that any of the Japanese, or others, who owned stock in Boss Tweed made any considerable investments in Pacific Gold.

Plaintiffs contend that they and their assignor were misled by statements made by the Japanese to the effect that Boss Tweed had made the January payment to Mr. Templeman, and that its option had been kept in good standing. It nowhere appears that the direc-

tors or stockholders of Boss Tweed were in any manner prevented from making this payment on behalf of that corporation. Plaintiffs argue that the stockholders and Mrs. Ebbinghouse might have raised the money required to keep the contract in good standing, but the evidence does not indicate that any definite plan was proposed looking toward this end, and it is well nigh impossible to imagine that any such plan was seriously contemplated. Hikida was the man who advanced the money to take over the mine. There can be little doubt that the stockholders in Boss Tweed had already lost their investment, before Hikida had even examined the property.

This is not an action on behalf of Boss Tweed, or any of its stockholders, to declare Boss Tweed the owner of the mine or any interest therein, or to set aside the conveyance to Hikida, or to gain any advantage for the creditors of Boss Tweed generally, or its stockholders. Plaintiffs brought this action as creditors of Boss Tweed, and sought to establish that not only Boss Tweed but the other defendants were liable to plaintiffs.

Plaintiffs criticize the testimony given by the defendants and other Japanese who testified as witnesses, and it is true that this testimony is in many respects unsatisfactory, but at the same time the basic facts are clearly shown.

If it be sought to hold defendants liable in this action upon the ground of conspiracy or fraud, involving a wrongful transfer of Boss Tweed property, such a theory fails, because Boss Tweed neither owned any property or net value, nor did it transfer any. It did not own the mine, and beyond question was about to lose its option to purchase the same.

If the reorganization of a corporation be merely a continuation of the old one, the reorganized corpo-

ration will be liable for the torts of the old company; but according to the weight of authority, if one corporation merely transfers its assets to another, the transferee will not be liable for the torts of the transferor. 10 Fletcher, Cyc. of Corporations, 354, § 4880. In volume 15 of the same work, 139, § 7122, the rule is stated as follows:

"The general rule, which is well settled, is that where one company sells or otherwise transfers all its assets to another company, the latter is not liable for the debts and liabilities of the transferor. The purchasing or transferee company, that is to say, is not liable on the other company's obligations merely by reason of its succession to such company's property. To render it liable there must be an agreement express or implied, to assume the other company's debts and obligations; or the circumstances must warrant a finding that there was a consolidation or merger of the corporations, or that the transaction was fraudulent in fact, or that the purchasing company was a mere continuation of the selling company."

As to fraudulent conveyances of property and the right of a creditor to attack the same, the rule is laid down in Glenn, Fraudulent Conveyances, § 1, as follows:

"The fraudulent conveyance, as known in our law, may be roughly defined as an infringement of the creditor's right to realize upon the available assets of his debtor;"

§ 241 containing the following:

"In another place it has been noted that the transfer actually passes title, that the creditor is the only person who can avoid it, and that he must act affirmatively if he wishes to assert this right. On the other hand we know that the creditor, at best, is entitled only to what his debtor has."

Plaintiffs cite the cases of *Benham v. Ham*, 5 Wash. 128, 31 Pac. 459, 34 Am. St. 851, and *McAvoy v. Jen-*

*nings,* 44 Wash. 79, 87 Pac. 53, but these were actions brought by a creditor for the purpose of setting aside his debtor's assignment. No such situation is here presented. Plaintiffs are seeking to force Hikida and the other defendants, outside of Boss Tweed, to pay obligations due from Boss Tweed.

Other cases cited by plaintiffs concern transfers of property by corporations or individuals in fraud of creditors, but Boss Tweed transferred no property—it had nothing to transfer—and plaintiffs are not seeking to recover for Boss Tweed any property whatsoever.

While a creditor has the right to rely upon the property of his debtor, and may in appropriate cases subject such property to the satisfaction of his claim, no such relief is here sought.

■ Plaintiffs did not prove that the defendants conspired to prevent Boss Tweed from using its assets for the protection of its option, or that anyone was prevented from acting on behalf of Boss Tweed in using its money or from obtaining money elsewhere for the protection of the option covering the mine. If certain stockholders in Boss Tweed had prevented the corporation and other stockholders therein from using corporate money or property in paying to Mr. Templeman the money due him, or had prevented Boss Tweed from raising money to make the payment, and at the same time had obtained title to the mine themselves, a different question would be presented. So far as Hikida was concerned, he was an absolute outsider, bearing no fiduciary relation to Boss Tweed or to any of its stockholders or to plaintiffs. True, plaintiffs and Mr. Ebbinghouse called the mine to his attention and endeavored to induce him to advance money to Boss Tweed; and undoubtedly, in part at least, due to plaintiffs' suggestion, Hikida did examine the property and later invested his money, as above set forth. This,

however, is not sufficient to render Hikida liable to plaintiffs.

. The record is replete with evidence showing the kindly interest which Mr. and Mrs. Ebbinghouse manifested toward the Japanese stockholders in Boss Tweed, including defendants Shimokon and Matsumura. Evidently, the stockholders continually brought their troubles to their friends, and were always received with consideration. Very possibly, the last named defendants and other of their associates believed that the stockholders and creditors of Boss Tweed would sometime, somehow, receive something, if the mine prospered under Hikida's management, and probably this thought was suggested to Mr. and Mrs. Ebbinghouse. As Mr. Ebbinghouse said, however, the management was entirely up to Hikida, and from the record it is not easy to ascertain the details of the later method of conducting the venture.

Mrs. Ebbinghouse testified that in July she asked Hikida if he was truly and honestly working for the best interests of the Boss Tweed stockholders, to which Hikida replied in the affirmative, adding that he was going to pay every one of the stockholders the amount of their investment, and that nobody would lose anything, adding that he could not then repay Mrs. Ebbinghouse any part of her seven hundred dollars, because it was very hard to get the money, but that just as soon as possible they would repay her a little at a time. This is far from proving a conspiracy. At the same time, Mrs. Ebbinghouse testified that, from the very beginning, she "had absolutely nothing to do with the business that was relative to that property. What the directors did was no business of mine."

Plaintiffs, of course, rely upon the conspiracy which they alleged and sought to prove, and which the trial court found that Uyeda and Fujita, together with

Shimokon and Matsumura, had entered into. The court also found that defendants Shimokon and Fujita informed Hikida concerning the facts of the conspiracy and the fraudulent understanding between the four persons above named, then urging Hikida to take up the new option and finance the mine. The trial court found that the four Japanese above named decided to make no effort to raise the five thousand dollars due Templeman on January 23rd, but we find no substantial basis in the record for any finding, and the court made none, to the effect that there was the least chance of raising this five thousand dollars for Boss Tweed. The court found that, at the time of trial, Pacific Gold was still operating the mine; that, until November 17, 1935, Hikida was president and manager and the dominating spirit of the corporation; that originally he owned all the capital stock, although some of the stock was never issued; that at all times up to November 17, 1935, Hikida was the majority stockholder; and that he invested in the mine altogether about forty-two thousand dollars. The court also found that Hikida paid nothing to Uyeda, Fujita, or anyone else for the option which he took up, and that he did not obligate himself to pay anything; that Shimokon invested about $335 in the mine, Matsumura $27.77 and some work at the mine, Uyeda $176, and that Fujita worked at the mine four months, for which he received stock.

The record does not support the trial court's conclusion that the evidence shows any conspiracy on the part of defendants which justifies the judgment which was rendered. A conspiracy to defraud cannot be established upon doubtful evidence; it must be shown by evidence which is clear and convincing. The evidence of the Japanese who testified, both the parties and other witnesses, is often unsatisfactory and con-

fused; but, on the other hand, the testimony introduced by plaintiffs fails to show any conspiracy which would support the judgment appealed from, and this evidence is not aided in this particular by the evidence introduced by defendants.

Plaintiffs contend that Pacific Gold recognized some liability for the debts of Boss Tweed, and in this connection call attention to a writing signed by Shimokon and Matsumura, dated July 16, 1933, in which it is stated that the signers had been authorized to deliver to Alex McKecknie

". . . a reasonable amount of capital stock of Pacific Gold Mining Company, a Washington corporation, within a reasonable period of time for his services rendered to the company."

Hikida testified that Mr. McKecknie sued the company, and that Pacific Gold settled the case. The evidence on this phase of the case is too vague and indefinite to afford any substantial basis for holding that plaintiffs herein are entitled to judgment against Pacific Gold, or anyone else.

Doubtless, the trust and confidence which Mr. and Mrs. Ebbinghouse reposed in the Japanese stockholders in Boss Tweed was, as to some, at least, misplaced; but nevertheless it must be held that the evidence preponderates against the judgment of the trial court.

The trial court concluded

". . . that plaintiffs are not entitled to recover any commission or other compensation for their services from any of the defendants for failure to produce an investor as contemplated by said contract, and that accordingly their first cause of action described in their complaint should be dismissed with prejudice."

We agree with the court in holding that the record does not support plaintiffs' contention as stated in their first cause of action, or defendants' counterclaim.

The judgment, in so far as the same runs against M. Shimokon, F. S. Matsumura, J. Tsuji Hikida, and Pacific Gold Mining Company, will be reversed, and as to them the action will be dismissed. In other particulars, the judgment will stand affirmed. The appellants who prevail on this appeal will recover their costs in this court. Plaintiffs will recover their costs in this court against appellant Boss Tweed-Clipper Gold Mines, Inc.

STEINERT, C. J., BLAKE, and ROBINSON, JJ., concur.

MILLARD, J., concurs in the result.

