[No. 27967. Department One. October 3, 1940.]

CHARLES P. ROBBINS, *Respondent*, v. WILSON CREEK STATE BANK, *Appellant.*[1]

[1]Reported in 105 P. (2d) 1107.

*T. B. Southard* and *Thomas I. Oakshott,* for appellant.

*Thomas A. E. Lally* and *John J. Lally,* for respondent.

SIMPSON, J.—This is an action to recover money allegedly received by defendant bank, plaintiff's contention being that defendant bank held that money as trustee for plaintiff.

April 9, 1928, E. O. Rosenberg executed and delivered to defendant bank his promissory note for $458.50, payable September 28, 1928. At the same time, and as part of the same transaction, Rosenberg executed two other notes to defendant bank, one in the amount of $1,400, the other $2,200. The note for $458.50 was indorsed and sold to the Exchange National Bank of Spokane on May 14, 1928. Plaintiff is the shareholders' agent of the indorsee bank, now insolvent.

At the time the three notes in question were signed, Rosenberg executed a chattel mortgage to defendant

covering livestock, farm machinery, and other personal property. This mortgage, dated April 6, 1928, was filed April 11, 1928, with the auditor of Stevens county, Washington.

Shortly after the assignment of the $458.50 note to the Exchange National Bank (to which we shall refer as "plaintiff bank"), defendant bank passed a resolution, dated June 5, 1928, in which the board of directors agreed to diligently attend to the collection of the notes, and to apply the proceeds first in the payment of the note which had been sold to plaintiff bank. They further agreed that any and all interest that defendant bank might have in those notes or in the security thereof, or any claim and demand whatsoever it might have against the maker and his wife, either secured or unsecured, was thenceforth to be subrogated to the claim of plaintiff bank against Rosenberg and his wife.

In August, 1928, plaintiff bank sent the $458.50 note to defendant bank for collection. In January, 1929, plaintiff bank was placed in the hands of a receiver. During January, 1929, defendant bank, after having suspended operations for two months, entered into an agreement with the supervisor of banking whereby certain doubtful assets were to be assigned to three trustees, who were to collect them and apply the proceeds to paying the depositors of the bank, surplus collections to be turned over to defendant bank. As part of the same agreement, the depositors, whom the trustees were to represent, waived sixty per cent of the amount due to them from the bank. Included among the doubtful assets turned over to the trustees were the notes of Rosenberg in the amounts of $1,400 and $2,200, along with the mortgage securing those notes and the one which plaintiff bank had purchased.

In July, 1930, the receiver of plaintiff bank wrote

to defendant bank and inquired about the note here in question, asking that it be returned to plaintiff bank. Defendant replied through its cashier, informing the plaintiff bank that the note was thought to have been paid, and that an investigation would be made. No further word having been received, the receiver of plaintiff again wrote regarding the matter October 17, 1930, but received no answer to his letter. The receiver testified during the trial that oral statements had been made to him subsequently by the attorney for defendant bank to the effect that the note had been lost. Again in June, September, and October, 1934, further letters were directed to defendant bank regarding the note, but no replies were received.

In October, 1934, plaintiff sued E. O. Rosenberg and his wife on the note. The answer to the complaint, made in October, 1934, stated that April 9, 1929, the mortgage and notes were fully paid and released by the execution of a new note and mortgage for $3,600, payable to the trustees; that the last-mentioned note and mortgage were fully paid and released by a new mortgage and note dated August 14, 1931, for $3,369.54, made payable to the trustees; that the last mentioned mortgage and note were paid and discharged by a new note and mortgage, in the amount of $3,600, payable to the same trustees, and that the last mentioned note and mortgage were fully paid and discharged December 15, 1933.

Immediately upon receipt of the foregoing answer, the receiver for plaintiff bank wrote to defendant bank, setting forth the details of the answer, and asking for a reply at once. No reply was received. From time to time, conversations were had with officers of defendant bank, but the receiver for plaintiff was unable to receive any information. Finally, in January, 1937, an amended complaint was drawn, naming the Rosen-

bergs and appellant as defendants. Letters were sent by the cashier and attorney of defendant, both stating that the note was lost and had not been paid. The letter from the attorney stated that he would try to get all information regarding the matter together, and asked that, in the meantime, the case be allowed to rest as it then stood. A letter from the attorney March 9, 1937, again expressed a desire to adjust the matter without a trial, and asked that plaintiff bank refrain from action until the matter had been discussed.

The case finally went to trial February 9, 1938. In the amended complaint, it was alleged:

"V. That if the said notes and mortgages were paid by defendant Rosenberg, as above alleged, they were paid to the said Wilson Creek State Bank.
"VI. That when the said Receiver, Thomas A. E. Lally, learned of the facts pleaded in said answer, he made an investigation and diligently tried to learn the true facts regarding the said allegations of defendant Rosenberg, and as to what actually did take place in regard to the note sued on herein; that he has made a diligent attempt to learn the facts, and that he and the plaintiff herein do not at this time know exactly what the true facts are with reference to the allegations of defendants, Rosenberg and wife, in their answer, as above set out, and will not and cannot know until the said defendants, and defendant, Wilson Creek State Bank, fully answer herein, and offer evidence at the trial of this cause."

Defendant bank demurred upon all of the grounds mentioned in Rem. Rev. Stat., § 259 [P. C. § 8346].

The demurrer was not argued, but the attention of the court was called to it at the beginning of the trial, at which time counsel stated that there was a question in his mind

" . . . as to whether the bar of the statute of limitations does appear in the complaint or not, or whether

it is going to be a matter to be determined by the evidence."

The trial judge stated that he overruled the demurrer.

The answer of defendant bank alleged that the note was never paid to defendant or anyone authorized by it to receive or accept payment; that the action was not commenced within six years from the date of any payments thereon and was therefore barred by the statute of limitations; and that the note was never paid by the makers.

During the trial, it was shown that the trustees, in taking the new notes and mortgages, had not released the original mortgage securing plaintiff's note, along with the two others; that some $1,300 was received by the trustees, partly from a governmental agency upon the release of the mortgages executed to the trustees by the Rosenbergs, partly from the Rosenbergs, the major portion of the payments from the Rosenbergs having been the proceeds of the sale of the balance of the chattels covered by the original mortgage here involved; and that the mortgages executed by the Rosenbergs to the trustees, including the one released to the governmental agency, covered the same chattels as were mentioned in the original 1928 mortgage.

Upon the disclosure of the foregoing facts, plaintiff bank asked for and was granted leave to amend its complaint in the following manner:

"XI. That as plaintiff is informed and believes and on information and belief alleges the facts to be: Said Wilson Creek State Bank, at a time unknown to plaintiff or his predecessors in interest and without their knowledge, collected from defendants E. O. Rosenberg and wife and from third parties unknown to plaintiff the full amount that was due and payable from said E. O. Rosenberg and wife by reason of said note and mortgage described in paragraph III of the amended

complaint; that said money was obtained by defendant Wilson Creek State Bank, as above alleged, and by having said defendants E. O. Rosenberg and wife execute new mortgages on the chattels described in said first-mentioned mortgage and by directing said third parties to convert said last-mentioned mortgages and chattels in consideration of the sum of money then paid by said third parties to said defendant bank; that all of said assets are now out of existence and are not available as security, or otherwise, to plaintiff; that the sum of money so obtained, or a like sum, is held and has been held by said defendant bank as trustee for plaintiff.

"XII. That at all times mentioned in the preceding paragraph number XI, and at all times subsequent thereto, the defendants E. O. Rosenberg and wife, Rosie Rosenberg, were and now are wholly insolvent.

"XIII. That plaintiff did not know and did not have reasonable grounds for knowing any of the facts or acts alleged in the two preceding paragraphs herein until on the 17th day of May, 1939, during the trial of this cause."

The trial court, the cause having been tried without a jury, held both the Rosenbergs and defendant bank liable for the amount of the note, plus interest. Defendant bank appeals, assigning the following errors: (1) The court erred in overruling appellant's demurrer to the complaint; (2) in permitting the trial amendment; (3) in its findings of fact; and that the court erred in entering judgment against appellant.

We shall deal first with the alleged error in granting leave to make the trial amendment. Appellant contends that it was erroneous, in that it resulted in a misjoinder of causes of action.

As has been stated previously, the amended complaint upon which respondent went to trial joined as parties defendant the makers of the note which was the subject of the action and the bank which had assigned the note to the respondent's principal. After

setting forth the fact that the assignment contract provided that the assignee should have first call on the proceeds of a chattel mortgage given to the assignor by the maker for the purpose of securing a number of notes, the complaint alleged:

"VII. That either defendants, E. O. Rosenberg and wife, or defendant, Wilson Creek State Bank, were liable to and indebted to the plaintiff by reason of the amount due on said note first pleaded herein, and this plaintiff has a cause of action against one or all of said defendants, but cannot determine against whom his right of recovery lies until the trial of this cause."

Clearly, the action against both parties sounded in contract, since the obligation was alleged to be "on said note." Since Rem. Rev. Stat., § 296 [P. C. § 8380] (1) provides that several causes of action may be united in one complaint when they all arise out of contract, express or implied, it would seem that the demurrer of the defendant bank, based on a misjoinder of causes of action, could not be sustained, in so far as the complaint upon which the case went to trial was concerned.

As for the trial amendment to the complaint, it apparently changed the nature of the cause of action against the bank from *ex contractu* to *ex delicto*; and such a joinder, unless both causes of action arise out of a single transaction, is subject to demurrer. *Bank of California v. American Fruit Growers, Inc.*, 4 Wn. (2d) 186, 103 P. (2d) 27.

It should be noted, however, that a failure on the part of the defendant to demur to the misjoinder at the proper time will constitute a waiver of the erroneous joinder. Rem. Rev. Stat., § 263 [P. C. § 8350].

The only bases for a demurrer which may be raised at any time are the failure to state facts sufficient to

constitute a cause of action and the lack of jurisdiction, according to the section of the code just cited.

We are therefore confronted with the question of whether or not appellant sufficiently raised the question of the misjoinder during the trial so as to enable us, upon appeal, to deal with the question.

Upon the submission of the amendment to the complaint during the trial below, appellant's attorney stated: "To which we object, your Honor. We object at this time to the trial amendment."

It should be noted that appellant could not rely on the fact that it had demurred to the complaint before trial on the basis of a misjoinder of causes of action, inasmuch as the new amendment, when it substantially changes the complaint, requires either a new demurrer or a refiling of the former one. 49 C. J. 555, § 765, and cases therein cited. The only place, therefore, where appellant might be said to have raised the question was at the point when its attorney stated that he objected to the trial amendment.

It is the universal rule that a demurrer based on a misjoinder of causes of action cannot be expressed in terms of a general demurrer, but must be special and specific. *Ames v. Kinnear,* 42 Wash. 80, 84 Pac. 629; *Bowyer v. Boss Tweed-Clipper Gold Mines, Inc.,* 195 Wash. 25, 79 P. (2d) 713. In the case at bar, the only objection made to the trial amendment to the complaint was the oral statement by counsel for appellant to the effect that he objected to the introduction of the amendment. It can hardly be urged that such a general statement as that could be interpreted as a special demurrer to a misjoinder of causes of action, and in view of the failure to so demur, we hold that appellant waived its demurrer.

It is true that, when a trial amendment is sought, the adverse party may object and request a

continuance, and the trial court must grant such a request, provided it appears that there would be prejudice to the objecting party if the request were denied. Provision for trial amendments is made in Rem. Rev. Stat., § 308-3 [P. C. § 8676-6], and this court has held that no error lies upon a refusal of the court to grant a continuance in those cases where the amendment does not involve any element of surprise. *Brown v. Nelson*, 149 Wash. 587, 271 Pac. 894. Further, we have held that a mere objection to the amendment, unaccompanied by a request for a continuance, will not be enough to afford a basis for finding error in the overruling of the objection. *Smith v. Michigan Lumber Co.*, 43 Wash. 402, 86 Pac. 652; *Ryder-Gougar Co. v. Garretson*, 53 Wash. 71, 101 Pac. 498, 132 Am. St. 1053.

Thus, it is apparent that the objection of the appellant was not sufficient to raise the question of the misjoinder of causes of action, due to its failure to be specifically made, and it also failed to raise the question of surprise, due to the failure to ask a continuance.

The principal finding of fact which appellant finds objectionable is that the $1,300 received by the trustees was used by and for the benefit of appellant. Appellant contends that the actions of the trustees were not binding upon it, pointing to the following provision in the agreement under which the committee of trustees was created:

"That the work of said trustees shall be entirely under the supervision of the parties of the second part, [the depositors and creditors] and shall be at their risk, cost and expense, and without any cost, expense or liability to the party of the first part hereto [appellant bank]."

The obligation of appellant to its depositors constituted an indebtedness, and the collections by the trustees and the diminution of the indebtedness of

appellant to the depositors were clearly for appellant's benefit. The mere fact that the agreement between appellant and the depositors contained the provision set forth above, did not prevent an agency relationship from arising.

"Whether an agency has in fact been created is to be determined by the relations of the parties as they exist under their agreements or acts. If relations exist which will constitute an agency, it will be an agency whether the parties understood the exact nature of the relation or not." 2 Am. Jur. 26, § 24.

Collections made from the Rosenbergs and from the governmental agency by the trustees must be considered to have been received by appellant itself, inasmuch as the money was applied to appellant's indebtedness to the depositors. The funds collected by the committee of trustees were deposited in appellant bank, and were disbursed by one of the trustees. Contacts were regularly maintained between appellant and the trustees. We hold that the trial court was justified in finding that the acts of the trustees were the acts of appellant, and that appellant could not escape liability by virtue of having disclaimed any liability for the acts of the trustees.

Appellant next contends that, even if it may be subject to liability, the right of respondent to sue is barred by the statute of limitations. Appellant bases its position on its belief that the cause of action, if any, arose January 31, 1929, the date on which it turned over the two notes for $1,400 and $2,200, along with the mortgage, to the trustees.

We held in an early case that, when a mortgage is security for several notes, assignees of the notes are entitled to share *pro rata* in the proceeds of the mortgaged premises, in the absence of any expressed stipulation as to priorities. *First Nat. Bank of Aber-*

deen v. Andrews, 7 Wash. 261, 34 Pac. 913, 38 Am. St. 885. Although some jurisdictions differ as to the rule regarding priorities in the case of assignments of the notes securing the same mortgage, all are agreed that the parties may stipulate as to the priority rights. See notes: 50 A. L. R. 543, 108 A. L. R. 485, 115 A. L. R. 40.

When the holder of any of such notes, secured by a common mortgage, realizes on the mortgaged property, he is deemed to hold the proceeds as trustee for the other holders, who are entitled to receive their shares in accordance with the agreement among them, or according to the rule of law of the jurisdiction, in the absence of any agreement among them. *Solberg v. Wright*, 33 Minn. 224, 22 N. W. 381.

Although no case involving this particular question has arisen in this state previously, we have held that, where a trustee holds a mortgage to secure himself and other sureties, and when he forecloses and purchases the property, a trust results in favor of the other sureties in the proportion that each had paid on the debt. *Amalgamated Gold Mines Co. v. Ridgely*, 100 Wash. 99, 170 Pac. 355. We are of the opinion that the principles resulting in the rule of that case are equally applicable to the facts before us at the present time.

In view of the fact that a trust relationship was created at the time appellant, through the trustees, collected from the Rosenbergs and the governmental agency, the question of the application of the statute of limitations assumes an aspect different than that which appellant indicates. Rem. Rev. Stat., § 159 (4), provides that, in an action for relief upon the ground of fraud, the cause of action does not accrue until the discovery by the aggrieved party of the facts constituting the fraud. This is but another way of stating the general rule that statutes of limitations do not

begin to run as between trustees and *cestuis* so long as the trust relationship continues. *Ackerson v. Elliott,* 97 Wash. 31, 165 Pac. 899; *Meck v. Behrens,* 141 Wash. 676, 252 Pac. 91, 50 A. L. R. 207. In other words, until the respondent had discovered the existence of the trust relationship and the fraud of the trustees, the trust relationship continues, and the statute of limitations does not apply.

■■■ As to whether or not respondent was negligent in failing to discover the facts in the case at bar, we feel that the trial court was justified in its finding of fact to the effect that respondent did not know and did not have reason to know that appellant had violated the terms of its resolution and agreement until the trial itself took place. Although there were several incidents which might be said to have given respondent an indication that something wrong had taken place, particularly at the time of the answer of the Rosenbergs, still we feel that appellants may not assert respondent's failure to act more promptly upon the information gleaned thereby, in view of the fact that appellant was instrumental in lulling respondent into inaction. The letters written by appellant's officers made definite statements to the effect that no payments had been received, and asked that respondent refrain from pressing suit until investigation could be made. It is clear that such actions on the part of appellant foreclosed its right to claim that respondent should have been more diligent in its efforts to ascertain what had happened. *Locke v. Andrasko,* 178 Wash. 145, 34 P. (2d) 444.

■■■ As an additional assignment of error, appellant claimed that there was no consideration for the subrogation agreement of June 5, 1928. Clearly, this agreement was a part of the transaction whereby the note was sold to respondent, and the consideration

which supported that transfer and sale supported the subsequent subrogation agreement. This is particularly true in view of the fact that the giving of such agreements was customary with appellant bank, and had been done on earlier notes assigned to respondent. These facts support respondent's contention that such an agreement was contemplated by the parties as part of the consideration for the price paid by respondent for the note.

The judgment of the trial court is affirmed.

MAIN, MILLARD, and ROBINSON, JJ., concur.

BLAKE, C. J. (dissenting)—As I understand the record, the bank got none of the money collected on the Rosenberg notes, nor did the money go to discharge any obligation owing by the bank. When the depositors waived claim to sixty per cent of their deposits, they released the bank from liability to that extent. In consideration of their waiver, they received certain assets owned by the bank, among which were the Rosenberg notes and chattel mortgages. These assets were entrusted to a *depositors'* committee for liquidation. This committee was the agent of the depositors, not of the bank. It does not appear that any of the money derived from the liquidation of the Rosenberg notes and chattel mortgages was turned over to the bank. On the contrary, it is admitted that it went to the depositors' committee for the benefit of the depositors—to apply upon the sixty per cent of their deposits, liability for which they had released the bank.

I dissent.