[No. 14364.   Department Two.   February 1, 1918.]

## AMALGAMATED GOLD MINES COMPANY, *Appellant*, v. H. B. RIDGELY *et al., Respondents.*[1]

PRINCIPAL AND SURETY — STOCKHOLDERS — MONEY BORROWED FOR CORPORATION—RIGHT TO CONTRIBUTION.   Where six stockholders of a mining company borrowed money upon their note for the use of the company and the company gave a note and mortgage to one of them as trustee to create a fund for their payment, there was but one transaction constituting the stockholders sureties for the company, so that two of the stockholders paying the indebtedness are entitled to contribution from the others to the extent of their payments.

TRUSTS—RESULTING TRUST.   Where a trustee holding a mortgage to secure himself and other sureties foreclosed and purchased the property, a trust resulted in favor of the other sureties in the proportion that each had paid on the debt, less the money necessarily expended by the trustee.

MORTGAGES—FORECLOSURE — ATTORNEY'S FEES — STATUTES.   Upon the foreclosure of a mortgage, under Rem. Code, § 475, the court, in fixing a reasonable attorney's fee, cannot exceed the amount contracted to be paid.

Appeal from a judgment of the superior court for Snohomish county, Alston, J., entered January 27, 1917, upon findings in favor of the defendants, in an action to quiet title, tried to the court.   Reversed.

*S. H. Kelleran, J. T. Mulligan,* and *E. E. Hess,* for appellant.

*Crollard & Crollard,* for respondents.

MORRIS, J.—Action by the appellant to quiet title to certain mining property.   The case comes before us on the findings, conclusions and decree, the only exception being that the findings do not support the decree.   The facts as found by the lower court, so far as material to a proper understanding of the case, are these:

In November, 1908, the respondents, Ridgely and Natwick, together with James Mitchell, F. J. Nichols,

[1]Reported in 170 Pac. 355.

J. A. Corbett, and Chris Corbett, borrowed three thousand dollars from the Columbia National Bank of Dayton, on their promissory note, payable in one year, with interest at eight per cent. The six makers of this note were stockholders in the Washington Meteor Mining Company; the respondent Ridgely was one of the trustees of this company. The money was borrowed for the use of the mining company to enable it to discharge certain pressing obligations, and the proceeds of the note were immediately turned over to the mining company and used by it for this purpose. In consideration of this action on the part of the six borrowers and the receipt of the money with which to pay its obligations, the mining company gave a note in like amount payable to Ridgely October 8, 1909, making the maturity of this note thirty days prior to the maturity of the $3,000 note given to the bank. This note likewise bore interest at the rate of eight per cent, and provided for an attorney's fee of $100. As security for its payment, the company executed a mortgage upon its property to Ridgely, as trustee for himself and the five other makers of the bank note. The note to the bank was not paid at maturity, each of the makers, however, paid his *pro rata* share of the interest then due amounting to $40. Nothing further was paid on this note until some three years thereafter, when Mitchell, Nicholls and the two Corbetts paid the bank the amount then due and took up the note.

The note given by the mining company to Ridgely, as trustee, not being paid at its maturity, an action of foreclosure was brought upon the mortgage in December, 1913, wherein a decree was entered foreclosing the mortgage and allowing Ridgely, as trustee, $800 for assessment work for the years 1911 and 1912, together with an attorney's fee of $100 and costs. In August, 1914, Ridgely, as trustee, purchased the property at the

foreclosure sale, and on August 10, 1915, a sheriff's deed was executed to Ridgely as trustee. About the same time, Mitchell, Nicholls and the two Corbetts conveyed their interest in the mining property to one Reynolds, who thereafter conveyed to appellant. These facts being found, the lower court entered a decree awarding an undivided two-thirds interest in the property to appellant and an undivided one-sixth interest each to Ridgely and Natwick, gave Ridgely judgment for two-thirds of the amount paid by him for assessment work upon the mining claims for the years 1911 and 1915, inclusive, which amount was fixed at $100 per year for each of the claims, or a total of $266.66 per year, with interest at the legal rate. Ridgely was also decreed to be entitled to recover $300 as a reasonable attorney's fee to be awarded him in the foreclosure of the mining company's mortgage, two-thirds of this amount being chargeable to appellant. The lower court, in its decree, refused to consider the right of appellant to contribution from Ridgely and Natwick for their *pro rata* shares of the amount paid by Mitchell, Nicholls and the two Corbetts in taking up the $3,000 due the Columbia National Bank, holding that this right of contribution, if any existed, could not be considered in this action, upon the ground that the rights of appellant, as successor in interest to Mitchell, Nicholls and the two Corbetts, arising out of the payment of the bank note and the giving of the mortgage by the mining company to Ridgely as trustee, were separate and independent transactions and must be contested in separate and independent suits.

The first question to be determined is the relation between the parties growing out of the giving of the $3,000 note to the bank. This relation, it seems to us, is of simple determination. The money was borrowed for the use and benefit of the mining company, turned

over to it and used by it, in consideration of which and as security for its payment, the note and mortgage to Ridgely were executed and made payable one month prior to the maturity of the note to the bank, with the plain intention of using the proceeds of the mining company's note to pay the bank note. As between the parties, this was not two transactions, as found by the lower court; it was one transaction, and the rights of the parties must be determined as fixed in that transaction. The makers of the bank note were not borrowing the money for their own use, but for the sole use of the mining company. The indebtedness was that of the mining company, not that of the makers of the note. The mining company executed the note and mortgage to Ridgely, not for the individual benefit of the six makers of the note, but for the purpose of creating a fund out of which the bank note should be paid. If so paid at maturity, there would be no liability against the makers of the note. The facts themselves evidence that this was the understanding and agreement of the parties.

The relationship of principal and surety does not necessarily require a formal written agreement to create it, but it may arise out of any implied parol agreement between the parties, and, in such cases, the liability to contribution arises not out of contract, but is founded upon equitable principles. Brandt, Suretyship, § 287. The case, in this respect, is like unto *Kellogg v. Lopez,* 145 Cal. 497, 78 Pac. 1056, where stockholders of the San Mateo Coursing Association made and indorsed a note for the accommodation of the association. The note was discounted and the proceeds turned over to the association and used by it. It was held that, as between themselves, the makers of the note were sureties of the association. A similar case was *Hughes v. Ladd,* 42 Ore. 123, 69 Pac. 548, where

members of a chamber of commerce obtained money from a bank upon their personal note and turned the money over to the chamber for its use and benefit. Held, that the chamber was the principal as to the note, and the makers were sureties. See, also, *Hoffman v. Habighorst*, 38 Ore. 261, 63 Pac. 610, 53 L. R. A. 908.

It is too evident to be questioned that the mining company recognized its obligation to pay the bank note and matured its note to Ridgely one month prior to the maturity of the bank note to create a fund out of which the bank note would be paid. It further recognized that the makers of the bank note were only accommodation makers or sureties by pledging its property to one of them as trustee for himself and the others against loss resulting from its failure to meet the obligation to the bank. When Ridgely foreclosed this trustee mortgage and took the title in himself as trustee, a trust resulted in favor of those who contributed to the payment of the indebtedness represented by the bank note to the extent of the payments made by them. The appellant succeeds to the rights of Mitchell, Nicholls and the two Corbetts in that trust, and Ridgely holds the title obtained through the mortgage foreclosure proceedings as trustee for himself and the others to the extent that each has contributed to the creation and preservation of the trust estate. This would result approximately in giving the parties, save the Natwick interest, the same interest in the property as found by the lower court. It would, however, eliminate Ridgely's judgment against appellant, for if Ridgely's interest rests upon this theory, that interest is the result of the money he has put into the trust estate, and, as trustee, manifestly he cannot retain that interest and at the same time compel appellant to reimburse him.

We fail to find any theory upon which Natwick's one-sixth interest in the property could be sustained, for he paid nothing, so far as we can ascertain from the findings, other than $40, his share of the first interest payment on the bank note. To that extent, if we have the figures correct, he is entitled to share in the estate.

The lower court was also in error in allowing Ridgely a $300 attorney's fee in the foreclosure proceedings. Under our statute, Rem. Code, § 475, the trial court in foreclosure cases may fix a reasonable attorney's fee regardless of the amount fixed in the mortgage, except that the sum so fixed may not exceed the amount contracted to be paid in the mortgage. This mortgage fixes $100 as an attorney's fee. The lower court was, therefore, limited to this sum.

Our conclusion is that the entire property is a trust estate to be divided between the parties as their interests may appear. The whole estate is represented by the amount paid in satisfaction of the bank note, together with such amounts as these findings determine have been paid in assessment work and other necessary charges upon the property. No exception having been taken to the findings, and no appeal being taken by Ridgely and Natwick, no charges or payments may be considered as due either party except as determined by these findings. In our opinion, each party must be charged his *pro rata* share of the payment to the bank and credited with the amount here found due, and then awarded such interest in the property as the payments made by him shall bear to the whole; Ridgely being awarded interest on the payments made by him, interest shall be charged upon the amount paid the bank from the date of payment to the entry of decree, and credited to the appellant, as successor in interest of Mitchell, Nicholls and the two Corbetts; each party to be then awarded such an interest in the trust estate as

the payments made, or to be made, by him shall bear to the whole. The lower court shall allow ninety days for compliance with its decree, and shall further provide that, in case Ridgely and Natwick fail to, within that time, contribute the amounts found due from them, after deducting all allowances here provided for, the entire interest in the trust estate shall go to the appellant upon its paying to Ridgely the amounts awarded him in the decree appealed from, after a proper reduction in the attorney fee, and to Natwick the amounts the findings show him to have paid.

The judgment is reversed, and cause remanded to the lower court for further proceedings consistent herewith.

ELLIS, C. J., MOUNT, HOLCOMB, and CHADWICK, JJ., concur.