[No. 17175. Department Two. July 11, 1922.]

NORBOM ENGINEERING COMPANY, *Appellant,* v. A. H. COX & COMPANY, INCORPORATED, *Respondent.*[1]

APPEAL (218)—NOTICE—PARTIES—SURETIES ON COST BOND. A surety on appellant's cost bond below, who had no right to appeal from the judgment for costs entered against it, is not a necessary party to the appeal upon whom notice must be served.

SALES (8, 22)—REQUISITES OF CONTRACT—EVIDENCE—SUFFICIENCY. There was a sale of drydock machinery by the manufacturer to defendant, a broker or dealer, ordered for another, where the initial order designated it as the order of the defendant, the subsequent correspondence showed that defendant considered itself the purchaser, and nothing to the contrary was claimed until its purchaser became badly involved and possibly would not take the goods.

SALES (88)—OPERATION AND EFFECT—DELIVERY BY OR THROUGH CARRIER. Where machinery was shipped to shipper's order and bill of lading with draft attached sent to the buyer, the title passed when the goods were delivered to the carrier by the shipper, subject to the shipper's rights under the law generally.

Appeal from a judgment of the superior court for King county, Ronald J., entered January 17, 1922, upon granting a nonsuit, dismissing an action on contract, tried to the court and a jury. Reversed.

*J. W. Russell,* for appellant.

*Shorett, McLaren & Shorett* and *Edward R. Taylor,* for respondent.

HOLCOMB, J.—Respondent moves to dismiss the appeal for the reason that no notice of appeal was served upon the surety on the cost bond furnished upon demand of the respondent because appellant is a nonresident corporation.

Upon the trial, a nonsuit was granted and judgment of dismissal, with costs, ordered against appellant and against the surety. Respondent's costs were there-

[1] Reported in 208 Pac. 87.

after taxed at $38.20. From the judgment of dismissal, this appeal is taken, and appellant did not serve a copy of its notice of appeal upon its surety.

The surety company had no interest in the litigation except as it was liable under the bond executed by it for costs and the consequent judgment thereon. It would have no right of appeal upon the mere question of costs, as we have often held, nor could it appeal from a judgment for a sum less than $200. Remington's Compiled Statutes, § 1719, prescribes the service of written notice of appeal upon the prevailing party. Section 1720, Rem. Compiled Statutes, provides that all parties similarly affected by the judgment may join in the notice of appeal. Parties not joining have the right to serve an independent notice of appeal within ten days after the giving of service upon them of the original notice, or may join in the appeal already taken. Any party who does not so join shall derive no benefit from the appeal unless from the necessity of the case.

As was said in *In re Ennis' Estate,* 96 Wash. 352, 165 Pac. 119, "We have held on numerous occasions that service of notice is required on those only who, in addition to appearing in the action, had some right of appeal", citing cases, and quoting from *Robertson Mtg. Co. v. Thomas,* 60 Wash. 514, 111 Pac. 795, as follows:

"We can look no further than to determine (1) whether he was a party to the action appearing in the case, and (2) whether he is entitled to an appeal. If these two conditions concur, it must be presumed that he is affected by the judgment; whether wrongfully affected, must be determined on the appeal."

In this case the surety was not a party to the action appearing in the case, and it is not entitled to appeal of its own right. There was, therefore, no necessity of serving the notice of appeal upon the surety upon

appellant's cost bond. See, also, *Mogelberg v. Calhoun,* 94 Wash. 662, 163 Pac. 29.

At the close of appellant's evidence, respondent moved for a dismissal of the action upon the following grounds: (1) that title did not pass; (2) that respondent was not the purchaser of the tables; and (3) that appellant recognized that the Norway-Pacific Construction & Drydock Company was the real purchaser. The trial court granted the motion principally upon the grounds, apparently, that title did not pass, and that respondent was not the purchaser of the tables, but merely the agent of appellant, who knew and recognized that the Norway-Pacific Construction & Drydock Company was the real purchaser.

The controversy is over the sale by appellant of some heavy drydock machinery, known as Lysholm Standard Punch Plate Tables, negotiations for which began in August, 1918, upon a telegram sent by respondent to appellant, which read as follows:

"Have signed order Norway-Pacific for four forty foot tables. Mailing you confirmation today."

On the day following, respondent wrote a letter to appellant confirming that telegram and enclosing its requisition for the four tables in question. The requisition was upon one of respondent's own requisition blanks, and was signed by its duly authorized agent, and, omitting the heading and date, reads as follows:

"B No. 1950.
"Show this number on your invoice.
"Norbom Engineering Co.
"Philadelphia, Pa.
"Please enter our order and deliver if possible, the following articles. *Under no circumstances* is this requisition to be altered unless properly authorized by us.

Amount

4    only 40 ft. Lysholm Standard Punch Plate Tables
     at $4,000.00 each less 5% to us.  Total $15,200.00
     Prices f.o.b. Philadelphia, Pa.
     To be shipped direct to:
     Norway-Pacific Construction & Dry Dock Co.,
     Everett, Washington.
     Charge Job No. E-5242.
                    "(Signed) A. H. Cox & Co., Inc.,
                    "By V. W. Thursen."

In the letter accompanying the invoice, respondent
said:

"Confirming telegraphic advice of yesterday, we
obtained a signed order from the Norway Pacific Con-
struction & Drydock Co., for four (4) only 40 ft.
Lysholm Standard Punch Plate Tables and we enclose
you herewith our requisition No. B-1950 covering the
same.

"We also enclose you herewith our check for 10%
in the amount of $1,520.00—leaving a balance due you
of $13,680.00, which it will be in order for you to draw
upon us for with bill of lading at time of shipment.

"We trust you will be able to make delivery as
quickly as possible and as much in advance of the three
months promised delivery as possible.

"We endeavored to secure a larger down payment
from the Norway-Pacific people but they advised us
that they were making all of their purchases on 10%
and as they have a good financial rating and are re-
sponsible people, we accepted a 10% down payment
from them and are sending you a down payment of a
like proportion.

"Kindly acknowledge receipt of this order and ad-
vise us when you expect to make shipment.
                    "Yours very truly,
                    "A. H. Cox & Co., Inc.,
                    "By Geo. O. Kretsinger."

Before alluding to the further facts, we desire to
observe that, in the foregoing letter, respondent in-
formed appellant that it (respondent) had obtained a

signed order for the tables in question, and that it enclosed its check for the ten per cent down payment, leaving a balance due appellant of $13,680, which, it was stated, it would be in order for appellant to draw upon respondent for with bill of lading at the time of shipment. One table was shipped on January 13, 1919, one on January 22, 1919, one on February 10, 1919, and one on March 5, 1919.

On January 21, 1919, respondent wrote appellant concerning the ship building conditions after the cessation of the war, and asked appellant to make some concession on the price of the four tables. In answer to that letter, on January 30, 1919, appellant wrote respondent asking what respondent would consider a fair adjustment. Replying to that letter respondent wrote, on February 11, to appellant, asking for a discount of at least twelve and one-half per cent on the purchase price of the tables. Answering that letter, appellant wired respondent on March 3, 1919, as follows:

"We accepted your order nineteen-fifty at four thousand dollars per table less five per cent. In order to get ready cash quick will accept your check at four thousand per table less ten per cent, if settled at once. Advise."

On March 4, 1919, respondent wired appellant:

"Your telegram recd two tables have arrived and been delivered but not paid for we will accept your proposition of ten per cent and remit at once."

On March 5, 1919, respondent wrote appellant as follows:

"Norbom Engineering Co.,
        "Derby, Pa.
    "Gentlemen: Referring to your telegram Mar. 3 and our wire 4th. Norway-Pacific were unable to take up our draft on presentation and we have accordingly accepted your proposition allowing us ten per cent on this order and we enclose herewith our check covering

balance due on these tables which have arrived. It appears that we will have to carry them.

"One draft for third table is now in the bank awaiting the arrival of the machine and would request that you authorize bank here to accept reduction of $200.00 from face of the draft now here, and in drawing the draft for the last table, please have the deduction made before drawing, if it is not already on the way.

"We have taken-up the draft at the bank for the second machine which has arrived.

"Yours very truly,
"A. H. Cox & Co., Inc.,
"A. H. Cox, Pres."

There was enclosed in the last quoted letter a statement made out by respondent covering the two tables which had already arrived; stating that it had taken up the draft at the bank for $3,420, and enclosing its check for $3,020 in payment of the balance due upon these two tables.

It will be observed that, in the letter of March 5, respondent states that the draft for the third table not yet received is in the bank at Seattle, and requests appellant to authorize the bank to accept a $200 reduction from the face of that draft, in accordance with appellant's offer in its wire of March 3. It will also be observed that in that letter respondent states that "it appears that we will have to carry them."

On March 17, 1919, appellant wrote respondent acknowledging receipt of the payment for the first two tables, and informed respondent that it was instructing its bank to authorize the Seattle bank to accept payment of the draft for the third table at $200 less than it called for. On March 24, respondent wrote appellant acknowledging receipt of the above letter, and stating that the arrangement covered the situation very nicely and that respondent appreciated the same. On April 17, 1919, respondent wired appellant:

"Your last two shipments have both arrived we will take up draft at once."

Respondent contends that appellant has simply brought suit against its own agent, and should have had recourse only against the Norway-Pacific Company. It contends, and cites authorities, *Whitlock v. Hicks*, 75 Ill. 460; *Hernandez v. Brookdale Mills*, 194 App. Div. 369, 185 N. Y. Supp. 485, that:

"As between the parties, the true character of the transaction may be shown, . . . Hence, as between them, it does not matter that appellant's name appeared . . . as the principal in the transaction." (*Whitlock v. Hicks, supra.*)

Upon the correspondence and exhibits in this record, we cannot hold that respondent was the agent of appellant in the transaction. The trial court evidently inadvertently overlooked the facts that, in the very order initiating the transaction, although the goods were ordered shipped to the Norway-Pacific Construction & Drydock Company of Everett, Washington, direct, it was designated as the order of respondent, and the total price of $15,200, f.o.b. Philadelphia, less five per cent dealer's or broker's profit, due from respondent to appellant, was assumed. In the letter accompanying the same, it was specifically stated by respondent that there was a balance due appellant of $13,680, less dealer's profit, for which it would be in order to *draw upon respondent,* with bill of lading, at the time of shipment. None of the subsequent correspondence or exhibits in any way contradict the idea that respondent considered itself the purchaser, until toward the last. After it was found, apparently, that its purchaser, the Norway-Pacific Construction & Drydock Company of Everett, was badly involved, and possibly would not take the goods, respondent stated that it did not desire

to be responsible for the collection, and desired to handle the matter in the best way for appellant.

Nor was appellant bound to look to the Norway-Pacific Company as the principal and as the purchaser of the goods because it had been disclosed as principal in the letter and order initiating the transaction. We held in *Casualty Co. of America v. Beattie,* 75 Wash. 166, 134 Pac. 817, 136 Pac. 1153, that, where an agent enters into a contract in his own name, even though his principal is disclosed, he is personally liable upon the contract. So here, the Norway-Pacific Construction & Drydock Company in no way appeared as the contracting party except as contracting with respondent. Respondent ordered the goods and appellant contracted with respondent, and the sale was made by appellant to respondent. Respondent made itself liable for the whole purchase price in its original requisition and letter accompanying the same.

Nor was the trial court correct in holding that title to the last two tables had not passed from appellant. On May 31, 1919, appellant wired and wrote to respondent demanding an investigation and report as to why the tables had been placed in storage at Everett, and inquiring what action had been taken, or was being taken, to have the tables delivered to the Norway-Pacific Company. Respondent promptly wired appellant explaining why the machines had been placed in storage, and stating that the railroad company had demanded the use of the car, and requested respondent to authorize them to place the machines in storage. Respondent stated that, "we advised them we had no authority to order this machinery unloaded, and declined to give them our permission." The railroad company then unloaded the machinery and placed it in storage, to be in the same condition as to ownership and control as it was when in the car.

Where goods are shipped to shipper's order and the bill of lading with draft attached is forwarded, as was done in this case, the question of whether delivery to the carrier is delivery to the vendee is to be determined by the intention of the parties.

". . . the taking of the bill of lading in the name of the seller will not prevent the delivery to the carrier from being a delivery to the buyer where such was the manifest intention of the parties, and the transaction was put in this form merely to secure the due payment of the price." 23 R. C. L. 1428.

Concluding, as we have, that respondent was the buyer of the machinery in question, and, under the terms of its purchase, title passed to it when the goods were placed on board the cars in Philadelphia, subject, of course, to shipper's rights under the law generally, it cannot be said that title did not pass to respondent for the two tables in question because the goods were taken from the railway cars and placed in storage by the railway company without prejudice to the true ownership of the goods. We are forced to the conclusion that the judgment of the trial court was erroneous and must be reversed and remanded for further proceedings.

Reversed and remanded.

PARKER, C. J., MACKINTOSH, MAIN, and HOVEY, JJ., concur.