Harold S. Osborne, Respondent, *v.* Allen Curtis and Others, Copartners Doing Business under the Firm Name and Style of Curtis & Sanger, Appellants.

First Department, May 2, 1924.

Contracts — consideration — plaintiff's brother had margin account with defendants, stockbrokers, who asked for more margin — plaintiff transferred his own stock to his brother's credit with defendants — defendants' forbearance to close out brother's account and their permitting him to continue trading was legal consideration.

Legal consideration existed for the transfer of corporate stock from the plaintiff's account with the defendant stockbrokers to the credit of plaintiff's brother with the defendants, since it appears that at the time of the transfer the brother's account was about to be closed out unless he could furnish more margin, and that the defendants on receipt of plaintiff's stock to his brother's credit, refrained from closing out the brother's account, and in addition thereto permitted him to continue to trade with them on margin. The agreement whereby the stock was transferred resulted in a detriment to the defendants which is a legal consideration.

Appeal by the defendants, Allen Curtis and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of January, 1924, upon the decision of the court rendered after a trial at the New York Special Term.

*White & Case* [*James Adam Murphy* of counsel], for the appellants.

*William L. Woodward,* for the respondent.

McAvoy, J.:

The plaintiff and his brother both had margin accounts with defendants who are brokers. The plaintiff's brother, Ernest, was told that he ought to have more margin, and one of the partners in the brokerage firm, Townsend, suggested that Ernest get his brother, Harold, the plaintiff, to transfer twenty shares of Wyoming Hotel Company stock from Harold's account to Ernest's credit. Harold, after Ernest spoke to him about the proposal, called on Townsend and was told that the brother's account was in " bad shape " and would have to be " made right " by more margin. Harold consented to the transfer of twenty shares of Wyoming Hotel Company stock to his brother's account, and pursuant to request sent a letter requesting and authorizing the transfer. Defendants acknowledged this letter and stated that they had made the transfer from Harold's to Ernest's account.

The dividends were sent to Harold for some time, to wit, from

December, 1916, to November, 1921; but thereafter defendants had the certificate transferred to their own name on the books of the Wyoming Hotel Company and subsequently received the dividends. Plaintiff signed the new certificate as an officer of the Wyoming Hotel Company, and told Townsend, when the latter said he intended to have the transfer made to the defendants, to " go ahead and do it."

Five years after the transaction of the transfer, the plaintiff made demand for retransfer to him of the twenty shares of Wyoming Hotel Company stock, and tendered all the indebtedness due by him to the defendants on his account; but his demand was refused on the ground that the twenty shares of Wyoming Hotel Company stock were pledged to Ernest's account with plaintiff's consent, and since Ernest's account was indebted to defendants for over $77,000, the collateral pledged thereto could not be released without payment in discharge of the debit of that account.

Plaintiff claimed that there was no consideration for his transfer and the trial court upheld him in this view. This was manifest error. The defendants had forborne, at the time of the transfer to them of the twenty shares of Wyoming Hotel Company stock, to close out Ernest's account for lack of proper margin, and at no time did the right of Harold ever arise, even taking his own evidence as true, to reclaim the certificate. The statement he himself makes in his testimony shows that the collateral was to be held until Ernest's account " became right."

The proof shows that it was not " right " at the trial; and plaintiff's proof that this collateral was deposited with defendants for his brother's account, merely to " make it look right," was so little regarded at trial that the trial court refused to find such was the fact in its decision.

The result obtained arose from the court's erroneous view that benefit to plaintiff had to be shown, when the law is that detriment to the promisee is enough to found good consideration.

Under the real doctrine of consideration there was ample consideration for the transfer of the stock to Ernest's account. Defendants gave up many legal rights. They permitted Ernest to go on trading. They did not close out his account or make any sale of his collateral. Instead of their proceeding to enforce their rights against Ernest to collect his indebtedness by the sale of his collateral and pursuing him for any deficiency, Ernest was permitted to go on trading, and his collateral fell even more in value until more security was demanded in July, 1917. There was not merely an extension of time given to Ernest by defendants, which in itself would be ample consideration for the transfer by the plaintiff,

but Ernest was permitted to go on trading, and his collateral was held intact for him, not only for months but even for years thereafter. The position of the defendants changed completely in reliance upon the transfer to them made by the plaintiff. The transfer was for the benefit of plaintiff's brother, as well as for the benefit of defendants. In so far as the plaintiff wanted to help his brother, it was also for the benefit of the plaintiff. Benefit, however, is not the criterion of what legal consideration is. There can be legal consideration where there is no benefit to one party and merely a detriment to the other of the parties for his promise. Benefit is not essential to the existence of legal consideration.

In *Rector, etc., v. Teed* (120 N. Y. 583) the defendant made a promise to Thomas Wright that if he would withdraw objections to the probate of a will, defendant would pay to plaintiff's church $500. Defendant's relatives were legatees. Defendant, however, took nothing by the will and urged that there was no consideration for his promise. The court said (p. 586): " The question presented for decision by this appeal is whether the instrument upon which the action was brought is supported by a consideration that the law recognizes as sufficient. ' A valuable consideration may consist of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other.' (3 Am. & Eng. Encyclopædia of Law, 831; *Currie v. Misa*, L. R. [10 Ex.] 162; Chitty on Cont. [9th Am. ed.] 29; 2 Kent's Comm. 465.)

" It is not essential that the person to whom the consideration moves should be benefited, provided the person from whom it moves is, in a legal sense, injured. The injury may consist of a compromise of a disputed claim or forbearance to exercise a legal right, the alteration in position being regarded as a detriment that forms a consideration independent of the actual value of the right forborne."

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs. Settle order on notice.