[No. 27729.   Department Two.   January 22, 1940.]

A. R. SMITH, *as Trustee, Respondent,* v. FRANK C. JOHNSON, *Appellant.*[1]

[1]Reported in 98 P. (2d) 312.

Welts & Welts, for appellant.

Hamlin & Hamlin (Henderson & McBee, of counsel), for respondent.

BEALS, J.—During the year 1934, and for some time prior thereto, Marriott & Smith, Inc., a corporation, was engaged in business in the city of Seattle as a dealer in farm produce. Frank C. Johnson was engaged in business in the city of Mount Vernon as Johnson Feed & Seed Company, and H. S. Smith was a farmer living at Coupeville, in Island county.

The corporation, wishing to purchase a quantity of marrowfat peas, communicated with Mr. Johnson, who, after some investigation, found that Mr. Smith had two hundred tons for sale. Mr. Johnson telephoned the corporation, stating that Smith demanded a down payment, whereupon the corporation stated that it would purchase the peas and reimburse Johnson for the down payment, which it did by promptly mailing Johnson a check for three hundred dollars, the amount which Johnson had paid Smith upon being advised by the corporation that it was satisfied with the terms suggested. With the check, the corporation mailed Johnson a memorandum of agreement, requesting that Johnson sign the same, which Johnson did, returning to the corporation the copy which he had signed. This memorandum, written on the corporation's form, and with its heading, reads as follows:

"Johnson Feed & Seed Co.,       Oct. 2, 1934
"Mt. Vernon, Washington.       No. 203

| "WE CONFIRM | Purchase from YOU TODAY: |
|---|---|
| "QUANTITY | 150 tons |
| "COMMODITY | Good quality Marrowfat Peas cleaned ready for shipment |
| "PRICE | $56.50 per ton. |
| "BASIS | F. O. B. dock Coupeville |
| "TIME OF SHIPMENT | October buyers option |
| "TERMS | Draft against documents |
| "WEIGHTS AND GRADES | Well graded packed in 100 lb. net good bags |
| "REMARKS | We are attaching $300.00 advance. Definite shipping instructions to follow. Be sure these are packed in good bags. |

"E. & O. E.          MARRIOTT & SMITH, INC.
"ACCEPTED  FRANK C. JOHNSON (Sd.)
           By  A. R. SMITH (Sd.)

"We are not responsible for delayed or non-shipment arising from strikes, lock-outs, fires, railway embargo or any other contingencies beyond our control. It is understood that the retention of this confirmation without notifying us of error therein, is an acknowledgment and acceptance of contract as above. Subject to Seattle Merchants Exchange rules."

Immediately after the conversation over the telephone with the corporation, Johnson and Smith, who were in the former's office, signed the following agreement:

"Mr. H. S. Smith agrees this 2nd day of October 1934 to sell to Frank C. Johnson and Frank C. Johnson agrees to buy One Hundred Fifty tons (150) of Marafat peas as follows:—

"The peas are to be delivered to the Coupeville Warf in Coupeville, Wash. and is to receive Fifty Three and Fifty Cents ($53.50) per ton for the peas after they are run over a No. 12/64-3/4 slot screen.

"The peas are to be taken out in the month of October.

"Frank C. Johnson is to pay for the cleaning.

"Frank C. Johnson agrees to take another fifty tons at the same price if Mr. Smith offers them on or before Saturday October 6th. 1934.

"The peas are to be paid for as they prepared for shipment at the dock on delivery of the dock certificates.

"A payment of Three Hundred and No/100 Dollars is hereby acknowledged.

"Signed   HARRY S. SMITH
FRANK C. JOHNSON"

Under date of October 10, 1934, the corporation signed another similar memorandum, covering the purchase of an additional fifty tons of peas at the same price, this document being practically identical with the memorandum above set forth. Smith was to receive three dollars a ton less for the peas than the corporation agreed to pay Johnson, the latter agreeing to furnish new sacks for the peas and pay for cleaning and processing the peas for shipment. The sacks in which the peas were shipped were to belong to Johnson, it being understood that he would sell the sacks back to Smith for six cents each. The corporation sent shipping instructions to Johnson, who relayed them to Smith, together with instructions for preparing the peas for shipment.

October 21st following, 54,500 pounds of peas were shipped to Johnson, pursuant to instructions from the corporation, Smith naming himself as consignee at Seattle. Smith called at the corporation's office and received from the corporation payment for the shipment. During the month of October, three other shipments were made, for which the corporation paid Smith. Of the two hundred tons covered by the two contracts, all were delivered and paid for except seventy-six tons. The value of peas on the market de-

clined, but December 29th the corporation ordered from Smith an additional 7,500 pounds, which Smith furnished, and for which he received payment from the corporation.

January 9, 1935, the corporation wrote Johnson, advising him that the eastern market was slack, and that the corporation had disposed of all its peas save seventy tons under the Smith contract. It was suggested that it would be helpful if Johnson could find some market for the seventy tons. It appears that nothing more was done until March 12, 1936, when the corporation wrote Smith the following letter:

"Mr. Harry Smith
"Coupeville, Washington.
"Dear Sir:
"In the fall of 1934, we advanced to you through the Johnson Feed Co. of Mt. Vernon, $300.00 on marrow-fat pea contracts. These peas have all been disposed of now, we taking the majority and you have disposed of the balance.

"We have not been able to move any additional quantities this year and it does not look like we will be able to do anything more this year. Should we be able to handle more peas next season, we will make new arrangements and advances.

"We would like to straighten our books up and wish you would send us your check for $300.00 so we can balance our account with you.

"Thanking you for your prompt attention, we are,
"Yours very truly,
"MARRIOTT & SMITH, INC.
A. R. SMITH   (Sd.)"

Smith ignored this letter.

Smith kept the balance of the peas until the fall of 1936, when he sold them for less than the contract price, suffering also some loss from resacking and storage.

October 16, 1936, the corporation wrote Johnson the following letter:

"Frank C. Johnson, doing business as
"Johnson Feed & Seed Co.,
"Mount Vernon, Washington.
"Dear Sir:

"Under our contract with you dated October 2, 1934, a true copy of which is attached hereto, we bought one hundred fifty (150) tons of peas therein mentioned, of which you have made delivery and have been paid to date for 123 and 3-8th tons.

"Also at the time this contract was made, we advanced you in cash the sum of three hundred dollars ($300.00) no part of which has ever been repaid or absorbed by shipments.

"There is a balance of 26 and 5-8th tons or approximately 53,250 pounds remaining undelivered under this order, and we hereby demand of you the complete performance of said contract and stand ready to adjust our accounts upon the tender of such performance.

"Kindly advise us of such action as you may take.
"MARRIOTT & SMITH, INC.,
"By A. R. SMITH, President."

October 28, 1936, the corporation sued Johnson for three hundred dollars, alleging in its second amended complaint its contract with Johnson; the payment of three hundred dollars as an advance on the purchase price of the peas; the delivery of some of the peas, for all of which plaintiff paid the contract price; that plaintiff had demanded delivery of the remaining portion of the peas; that no delivery had been made; and that the three hundred dollars was due and owing to the plaintiff either from Johnson or Smith, the latter having been made a defendant in the action.

Smith answered the amended complaint, alleging his contract with Johnson; denying any liability, either to the plaintiff or Johnson, and asking judgment against Johnson for the sum of $260.50 damages for

breach of contract, and for his costs. Defendant Johnson answered, alleging that he acted merely as the corporation's agent, and that, if defendant Smith had any claim, such claim was against plaintiff and not against Johnson. By a trial amendment, he pleaded fraud and mistake, if the court should hold that he had contracted to sell the peas to the corporation. He also filed a cross-complaint against Smith, asking judgment for ninety dollars for sacks delivered Smith by Johnson. He also alleged that, if the plaintiff had not received all of the peas covered by the contracts, such fault was chargeable to plaintiff, and not to Johnson.

The issues having been duly made, the action was tried to the court, sitting without a jury, and resulted in findings of fact and conclusions of law in favor of both the plaintiff and Smith and against Johnson, followed by a judgment in plaintiff's favor against Johnson for the sum of three hundred dollars, and in favor of Smith against Johnson for $197.70. From the judgment against him and in favor of Marriott & Smith, Inc., Johnson has appealed, assigning error upon the entry of judgment against him and in favor of the corporation; upon the inclusion of interest on the award; on the refusal of the court to enter judgment in Johnson's favor and against the corporation for the amount which the court found to be due to Smith on the purchase price of the peas; upon the ruling of the court that, in purchasing the peas, Johnson acted for himself and not as agent for the corporation, and that Johnson himself contracted to sell the corporation the peas.

During the trial, A. R. Smith, who had been constituted trustee for the property of Marriott & Smith, Inc., a corporation, was substituted as party plaintiff herein.

The trial court found that the peas were purchased

by the corporation from appellant at the price referred to in the memorandum above set forth; that, upon the date thereof, the corporation paid to appellant three hundred dollars on account of the purchase price; and that appellant, in signing the contract, did so on his own behalf, and not as agent for the corporation. The court further found that all of the peas which were delivered pursuant to the contract were paid for in full by the corporation, and that no portion of the three hundred dollars was repaid to the corporation or absorbed by shipments made pursuant to the contract. The court also found that appellant made the written contract with defendant Smith, and at the same time paid to Smith, out of his own funds, the sum of three hundred dollars. The court made other findings concerning the dealings between appellant and Smith, in substance as hereinabove recited.

It appears that, when Smith finally sold the peas on the open market, he received therefor more than the market price for such peas had been at any time between December 29, 1934, and November 3, 1936, the price which he received, however, being less than that called for by the contract.

Appellant argues that respondent cannot maintain this action as one to recover back a portion of the purchase price paid on a rescinded contract, the contract having been executory and partially performed, and the corporation having demanded performance. Appellant also contends that a purchaser in the corporation's position, seeking to recover upon the failure of the seller to deliver, is limited, as to the measure of his damages, to the difference between the contract price and the market or current price of the goods at the time when they should have been delivered, or at the date of the refusal to deliver, appellant contending that the fact that all or part of the purchase

price has been paid is immaterial, except possibly as to the time of determining the market price.

■ Whatever appellant's intention may have been, and whatever his belief as to the legal effect of the papers which he signed, the finding of the trial court to the effect that the contract was between the appellant and the corporation, and that appellant was not in law the agent of the corporation, is amply supported by the record. We are in accord with this finding. Appellant signed the contract for the purchase of the peas between himself and defendant Smith before he signed the contract with the corporation. Prior to that time, he had executed similar contracts of sale to the corporation.

■■ At the trial, appellant argued that the document which he signed was not a contract, but merely a memorandum of price, quality, etc., but the trial court correctly ruled against him as to that contention.

In the case of *Marsh v. Wade*, 1 Wash. 538, 20 Pac. 578, this court said:

"It may be stated in passing, also, that a cardinal principle of evidence, unchanged and unchanging, is that parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument; and that when the terms or contents of a written instrument are the subject of inquiry, the instrument itself, if in existence and capable of being produced, is the only proper evidence. This is elementary."

The facts in the case cited differ from those in the case at bar, but the court's observation is pertinent here. Appellant was afforded ample opportunity to introduce relevant and competent evidence to show that the contract was other than appears on its face, and we find in the record no evidence of fraud, nor any evidence justifying any judgment relieving appellant on the ground of mistake.

The case of *Thomas Gordon Malting Co. v. Bartels Brewing Co.*, 206 N. Y. 528, 100 N. E. 457, 461, is of interest in this connection. Our opinion in the recent case of *Asher Bros. General Illuminating Co. v. General Illuminating Co.*, 193 Wash. 105, 74 P. (2d) 495, is also in point.

It is true that the corporation wrote Smith, demanding from him return of its three hundred dollars, but this cannot operate to change the basic contractual relationship as it already existed between appellant and the corporation.

Were there any doubt as to the relationship between appellant and the corporation, the latter's letter to defendant Smith would be evidence in support of appellant's contention, but the relationship is too clear to admit of argument. In discussing this phase of the evidence, the trial court called attention to the fact that, although the corporation had several times previously made payments to the defendant Smith, at no time did the corporation suggest charging Smith with the three hundred dollars.

Undoubtedly, the corporation was very slow in calling for the peas which it had agreed to purchase from appellant. Under the contract, it was obligated to pay a price higher than the market as it stood for some time. It does not appear, however, that any demand was made upon the corporation to accept the balance of the amount called for by the contract; and when, October 16, 1936, the corporation wrote appellant, demanding complete performance of the contract, it does not appear that appellant took the stand that the corporation had theretofore breached its agreement.

In the case at bar, appellant neither pleaded nor alleged any breach of the contract or default of any kind on the part of the corporation, nor does it appear that he ever made any tender of delivery to the cor-

poration, or any demand that the latter accept delivery. On the record, it must be held that appellant breached the contract when he failed to comply with the corporation's demand for delivery of the undelivered portion of the peas called for by the contract.

■ Appellant contends that this is an action for damages for failure to deliver goods under a contract of purchase and sale, and that the measure of damages is the difference between the contract price and the market price at the time of refusal to deliver. As the market price of the peas was lower than the contract price when the corporation demanded complete performance, if appellant's theory is correct, respondent would not be entitled to the judgment which the trial court awarded him.

Respondent argues that the action is not one to recover damages for breach of contract, but is merely for the return of money for which the consideration has failed. Clearly, the complaint in the action was drawn upon this theory. There is no allegation of any damages, the gist of the complaint being the allegation that the corporation paid three hundred dollars, for which it has received nothing, and that the money should be returned.

Respondent relies upon Rem. Rev. Stat., § 5836-70 [P. C. § 6227-70], a portion of the uniform sales act, which section reads as follows:

"Nothing in this act shall affect the right of the buyer or the seller to recover interest or special damages in any case where by law interest or special damages may be recoverable, or to recover money paid where the consideration for the payment of it has failed."

In the case of *Stack v. Baird,* 171 Wash. 651, 19 P. (2d) 105, this section of the code was considered. It appeared that the defendant Baird had contracted to raze an old building containing considerable steel in

the form of beams, etc. By written contract, Baird sold to plaintiff Stack all of the steel and iron in the building for the sum of $775, which Stack paid, thereafter removing eight tons of the steel, which he had agreed to remove "as and when it is exposed in the walls and floors of the building by the seller in the course of his wrecking operations." Later in the wrecking operations, the steel was not exposed in the walls and floors, but was badly bent and twisted by explosives. Stack refused to accept any more steel under the contract, and later sued for the return of the money which he had paid, and for damages. This court held that, while Stack was not entitled to damages by way of alleged profits, he was entitled to the return of the purchase price which he had paid, less the value of the quantity of steel which he had received. In summing up the matter, this court said:

"One hundred and sixteen tons of the steel, for which appellant paid at the rate of $6.25 a ton, were not delivered to him. The consideration for the payment failed, therefore appellant was entitled to recover the money paid by him to the respondents. Rem. Rev. Stat., § 5836-70."

In discussing the contract, this court also said:

"A different intention not appearing, the property in one hundred and sixteen tons of steel which were not put in a deliverable state by the respondents, as required by the contract, did not pass to the appellant [quoting Rem. Rev. Stat., §§ 5836-18, 5836-19]."

Several cases decided prior to the uniform sales act should be considered. In the case of *Jahn & Co. v. Wright*, 109 Wash. 164, 186 Pac. 262, it was held that, under a contract for the purchase of hay, to be paid for on the buyer's measurement, the buyer was entitled to recover an advance which he had made on the purchase price, the sellers having been at fault in

refusing to deliver unless payment be made upon their measurements. In the cases of *Taylor v. Foster*, 115 Wash. 249, 197 Pac. 21, and *American Nat. Bank v. National Bank of Commerce*, 132 Wash. 490, 232 Pac. 295, the purchaser was allowed recovery for goods not delivered.

From the standpoint of respondent, this action is rather one to recover money had and received than an action for damages. The facts are peculiar, and it is difficult to understand some of the actions of the parties, but the record is plain, and the trial court properly held that, upon the facts shown, the respondent was entitled to recover judgment against appellant for three hundred dollars, with interest.

No question is presented upon this appeal as to the judgment in favor of defendant Smith and against appellant.

Judgment affirmed.

BLAKE, C. J., STEINERT, GERAGHTY, and JEFFERS, JJ., concur.